<hr />

THE STATE OF KANSAS v. JOHN D. JACK.

No. 13,774.  ( 76 Pac. 911.) *

SYLLABUS BY THE COURT.

1. ANTI-TRUST LAW—*Provision for Preliminary Examination of Witnesses Approved.* A proceeding before the district court or judge thereof upon the written application of the county attorney or attorney-general, under section 10 of chapter 265, Laws of 1897 (Gen. Stat. 1901, § 7873), to subpoena witnesses to testify of their knowledge of violations of provisions of the act known as the "anti-trust law," is of the nature of an investigation, or preliminary proceeding, and is a valid exercise of judicial power, the procedure being "due process of law," within the meaning of the fourteenth amendment to the federal constitution.

2. —— *Exemption Provision of Bill of Rights Held Not Available.* The exemption provided by section 10 of the bill of rights (Gen. Stat. 1901, § 92), that "no person shall be a witness against himself," cannot be claimed by a witness when, by the

<hr />

* Pending in the supreme court of the United States upon appeal.

terms of a statute, the immunity afforded is coextensive with the constitutional privilege of silence.

3. ———— *Immunity Provision Held Coextensive with Constitutional One.* The immunity afforded by section 10 of the anti-trust law of 1897 to a witness subpœnaed in a proceeding or inquiry to testify of his knowledge of violations of that law is coextensive with the constitutional privilege that "no person shall be a witness against himself."

4. ———— *Possibility of Prosecution under Federal Anti-trust Law Will Not Excuse Witness from Testifying.* A witness subpœnaed in a proceeding or inquiry to testify of his knowledge of violations of the anti-trust law cannot refuse to give his evidence on the ground that the immunity provided by section 10 of the act does not afford protection against the use of his evidence in a prosecution against him for violations of the federal anti-trust law.

5. ———— *Prohibition of Doing Further Business in the State Construed.* The provision of section 5 of the anti-trust law of 1897, that every person, company or corporation violating any of the provisions of the act be denied the right of, and prohibited from, doing any business within the state, contemplates the prohibiting of the continuance of, or the engagement in, business only when such business is in violation of the act.

6. ———— *Provision of Defense in Civil Actions Construed.* The provision of section 7 of the anti-trust law of 1897, that in any civil action there may be pleaded in defense that the plaintiff, or any person interested in the prosecution, has, within one year, been guilty of a violation of any of the provisions of the act, contemplates only civil actions relating to, and growing out of, transactions prohibited by the act.

7. ———— *Law Held Not in Contravention of Fourteenth Amendment to the Federal Constitution.* The anti-trust law of 1897 is held not to be in contravention of the provisions of the fourteenth amendment to the constitution of the United States, but to be a valid exercise of legislative power.

Appeal from Shawnee district court; Z. T. HAZEN, judge. Opinion filed May 7, 1904. Affirmed.

*C. C. Coleman,* attorney-general, *Otis E. Hungate,* county attorney, *Edwin A. Austin,* and *Thompson, Springer & Price,* for The State.

*Rossington, Smith & Histed, J. T. Pringle,* and *R. B. Gilluly,* for appellant.

The opinion of the court was delivered by

ATKINSON, J.: This is an appeal by John D. Jack from a judgment of imprisonment for contempt by the district court of Shawnee county. Appellant, as a witness, refused to answer certain questions in a proceeding, or investigation, in that court concerning the existence of unlawful combinations of coal-operators, and was adjudged guilty of contempt.

On September 3, 1903, the attorney-general and the county attorney of Shawnee county, proceeding under section 10 of chapter 265, Laws of 1897 (Gen. Stat. 1901, § 7873), filed in the district court of Shawnee county their verified application, informing the court of the existence of unlawful combinations of persons engaged in the operation of coal-mines in Osage county, for the purpose of fixing the price of coal at the mines and the price to be charged to purchasers. It was therein averred that the members of these combinations met monthly in the county of Shawnee and fixed minimum prices to be charged for coal, and agreed that they would not sell it for less than such minimum prices, and that these agreements were carried out and executed by the members. Among others named in said application as having knowledge of the existence of these combinations was appellant, and for him it was therein asked that a subpœna issue. The district judge awarded subpœnas upon the application. The court denied the motion of appellant to quash the subpœna issued, and he thereupon appeared in court as a witness, and was asked the following questions:

"Ques. Do you know of any meetings of the operators of Osage county being held in this city [Topeka] at intervals during the last year?

"Q. I will ask you if you have any knowledge of a combine's or an agreement's being entered into by operators in coal of Osage county for the purpose of fixing the price of coal sold to residents and citizens of Kansas?,

"Q. Have you any knowledge of any meetings of coal-operators of Osage county, Kansas, being held in this city on the last Saturday night of each month during the last year, the purpose of which was to fix the price of coal which was to be charged to citizens of Kansas?

"Q. Do you know of any agreement's having been entered into within this county within the last year between the operators in coal who operate in Osage county, Kansas, by which they attempted to fix and settle the price of coal between themselves and citizens of Kansas?"

Appellant refused to answer each of the foregoing questions, assigning the following as his reason therefor:

"I am engaged in operating a coal-mine in Osage county, Kansas, and in dealing in the output of said mines, and am one of the persons named in the application for subpoenas in this proceeding. The product of the mines of Osage county is the subject of both domestic and interstate commerce. I respectfully decline to answer the questions, or to testify with reference to the subject of this inquiry, for the reason that, in answering the questions and in submitting myself to an examination as a witness, I may incriminate myself and give information as to the details of the said alleged combination and agreement, and the names of parties and witnesses which might supply the means of convicting me of a crime and of subjecting me to imprisonment, fines, forfeitures, and penalties, and I therefore claim the privilege and immunity of section 10 of the bill of rights."

The anti-trust law (Laws 1897, ch. 265 ; Gen. Stat. 1901, §§ 7864–7874). is vigorously assailed. It is

charged that the act is in violation of the fourteenth amendment to the federal constitution, in that it deprives a person of liberty and property without due process of law, and denies him the equal protection of the law.  It is also charged that the requiring of appellant to answer these questions (his refusal so to do being the cause of his imprisonment for contempt) deprives him of the rights, privileges and immunities guaranteed by section 10 of the bill of rights (Gen. Stat. 1901, § 92).  The motion to quash the subpœna raised the question whether the proceedings upon the application and the issuing of subpœnas thereunder, as provided by section 10 of the act of 1897, were "due process of law," within the meaning of the fourteenth amendment to the federal constitution.  Said section reads :

"The several district courts of this state and the judges thereof shall have jurisdiction, and it shall be their duty, upon good cause shown and upon written application of the county attorney or the attorney-general, to cause to be issued by the clerk of said court subpœnas for such witnesses as may be named in the application of a county attorney or the attorney-general, and to cause the same to be served by the sheriff of the county where such subpœna is issued ; and such witnesses shall be compelled to appear before such court or judge at the time and place set forth in the subpœna, and shall be compelled to testify as to any knowledge they may have of the violations of any of the provisions of this act ; and any witness who fails or refuses to attend and testify shall be punished as for contempt, as provided by law.  Any person subpœnaed and examined shall not be liable to criminal prosecution for any violation of this act about which he may testify.  Neither shall the evidence of any such witness be used against him in any criminal proceeding.  The evidence of all witnesses so subpœnaed shall be taken down by the reporter of said

court, and shall be transcribed and placed in the hands of the county attorney or the attorney-general, and he shall, in the proper courts, at once prosecute such violator or violators of this act as the testimony so taken shall disclose. Witnesses subpœnaed as provided for in this section shall be compelled to attend from any county in the state.''

It is urged by appellant that the proceeding provided by this section is not judicial in its character, and is not "due process of law," in that it is not founded upon complaint, information, or indictment. District courts are expressly created by the constitution, and therein given such jurisdiction as may be provided by law (Const., § 6, art. 3), its extent and practice being left to the legislature. Judges of the district courts are expressly created by the constitution, and therein given such jurisdiction at chambers as may be provided by law (Const., § 16, art. 3), its extent being left to the legislature.

The wide scope given to the states in the matter of their judicial tribunals and the character of their procedure, as recognized by the federal government, was clearly set forth in the opinion by Mr. Justice Brewer, in the case of *Brown v. New Jersey*, 175 U. S. 172, 175, 20 Sup. Ct. 77, 44 L. Ed. 119, where it was said :

"The state has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualification that such procedure must not work a denial of fundamental rights, or conflict with specific and applicable provisions of the federal constitution. (*Ex parte Reggel*, 114 U. S. 642, 5 Sup. Ct. 1148, 29 L. Ed. 250; *Iowa Central Railway v. Iowa*, 160 id. 389, 16 Sup. Ct. 344, 40 L. Ed. 467; *Chicago, Burlington & Quincy Railroad v. Chicago*, 166 id. 226, 17 Sup. Ct. 581, 41 L. Ed. 979.) 'The fourteenth amendment does not profess to secure to all persons in the United States the benefit of the same

laws and the same remedies.   Great diversities in these respects may exist in two states separated only by an imaginary line.   On one side of this line there may be a right of trial by jury, and on the other side no such right.   Each state prescribes its modes of judicial proceeding.'   *Missouri v. Lewis*, 101 U. S. 22, 31, 25 L. Ed. 989.   . . .

''A perfectly satisfactory definition of due process may perhaps not be easily stated.   In *Hurtado v. California*, 110 U. S. 516, 537, 4 Sup. Ct. 111, 121, 28 L. Ed. 232, Mr. Justice Matthews, after reviewing previous declarations, said :   'It follows that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law.'   In *Leeper v. Texas*, 139 U. S. 462, 468 11, Sup. Ct. 577, 579, 35 L. Ed. 225, Chief Justice Fuller declared 'that law in its regular course of administration through courts of justice is due process, and when secured by the law of the state the constitutional requirement is satisfied.'''

Section 1923, General Statutes of 1901, gives to district courts general original jurisdiction of all matters, both civil and criminal, not otherwise provided by law.   Section 1924 provides that district judges ''shall have and exercise such power in vacation or at chambers as may be provided by law, and shall also have power   .   .   .   to punish for contempt in open court or at chambers.''   The right of the district courts and district judges to punish for contempt, without a jury, is well recognized.   (*In re Millington, Petitioner, &c.,* 24 Kan. 214 ; *The State, ex rel., v. Durein,* 46 id. 695, 27 Pac. 148 ; 7 A. & E. Encycl. of L., 2d ed., 66 ; *Interstate Commerce Comm. v. Brimson,* 154 U. S. 447, 14 Sup. Ct. 1125, 38 L. Ed. 1047.)   By section 10 of the act of 1897 the legislature conferred upon district

courts and judges thereof the power to order the issue of subpœnas for witnesses, upon written application, and to compel them to attend and testify, with authority to punish as for a contempt upon a refusal so to do. In the case of *Interstate Commerce Comm. v. Brimson,* supra, the court upheld a somewhat analogous provision of the interstate-commerce act wherein the circuit court is given power to entertain an application of the commission, issue subpœnas, examine witnesses, and commit for contempt where a witness refuses to testify. The procedure under section 10 is an investigation, or preliminary proceeding, and can result in no final judgment, except in a proceeding for contempt against a recalcitrant witness, unless it be the result of a regular judicial trial, conducted in the manner provided by statute. It is a valid exercise of judicial power, and the procedure is "due process of law."

The case of *The State v. Smiley,** 65 Kan. 240, 69 Pac. 199, was an appeal from a judgment of conviction for a violation of this law. It was there charged that the act imposed such limitations upon freedom of contract as to constitute a deprivation of the right of property, contrary to the fourteenth amendment to the federal constitution. This court held that it did not conflict with the right to acquire property by lawful contract, the guaranty of which is secured by the federal constitution, and that the forbiddance of membership in combinations in restraint of trade was a valid exercise of legislative power.

It is contended by appellant that compliance with the requirement to answer the foregoing questions would have deprived him of the privileges and immunities guaranteed to him by section 10 of the bill

*Affirmed by supreme court of the United States, February 20, 1905 (25 Sup. Ct. 289).—REP.

of rights, which provides that "no person shall be a witness against himself." This is not only a constitutional right, but it is also a fundamental principle of the common law, embodied in the maxim that "no man can be compelled to criminate himself." This proceeding before the district court was of the nature of an investigation to inquire whether there had been criminal violations of the anti-trust law. If appellant were guilty of any of the offenses of which inquiry was made by the questions which he refused to answer, he was liable to criminal prosecution under this law. He assigned as a reason for his refusal to answer the questions that in doing so he might criminate himself under the anti-trust law, he being an operator of coal-mines in the state, and dealing in their output. The legislature, by section 10 of the act of 1897, provided immunity to witnesses subpœnaed to testify concerning violations of the act in the following language :

"Any person subpœnaed and examined shall not be liable to criminal prosecution for any violation of this act about which he may testify. Neither shall the evidence of any such witness be used against him in any criminal proceeding."

Was appellant, as a witness upon this investigation, entitled to invoke the protection of section 10 of the bill of rights ? Was he entitled to plead the privilege of silence ? If the immunity against prosecution, provided for by section 10 of the anti-trust law, afford the witness upon such investigation the protection against future prosecutions that is guaranteed to him by section 10 of the bill of rights, then appellant was not entitled to invoke the protection of the latter provision ; nor was he entitled to plead the privilege of silence. (*Counselman v. Hitchcock*, 142 U. S. 547, 12

Sup. Ct. 195, 35 L. Ed. 1110; *Brown v, Walker*, 161 id. 591, 16 Sup. Ct. 644, 40 L. Ed. 819.)

It is well settled that legislative bodies possess the power to grant amnesty to witnesses and compel them to give testimony against themselves. This power has been recognized as a public necessity in the enforcement of laws. Congress and the legislatures of many states have enacted immunity statutes for the purpose of securing convictions for such offenses as gambling, bribery, the manufacture or sale of intoxicating liquors, usury, combinations in restraint of trade, and like offenses, in which two or more persons participate to constitute the crime, the necessities of the case and the difficulty of obtaining witnesses to establish the offense, punish the offenders, and suppress the crime, being deemed sufficient to warrant the extending of immunity to a participant in order to constitute him a competent witness against the other offenders. The constitutional privilege that a person shall not be required to be a witness against himself is of great value to the citizen accused. However, the authorities, state and federal, recognize the rule that when the testimony sought cannot, by reason of an immunity statute, be used as a basis for, or in aid of, a prosecution which might result in fine or imprisonment, or involve a penalty or forfeiture, the privilege cannot be claimed. Immunity statutes must be given a reasonable construction—not a strained and artificial one, and when it is apparent to the court that a person is fully protected from the effect of his testimony he should be required to testify, even though it may show him guilty of a criminal offense.

It is claimed, however, that the immunity afforded by section 10 of the anti-trust law is not sufficient to constitute a substitute for the privilege of silence

guaranteed the witness by section 10 of the bill of rights. The legislature determines what acts of the individual shall constitute a crime against the state, and what shall constitute the punishment of an offender, upon conviction. It determines within what period a prosecution for the commission of an offense shall be commenced, and may determine, within constitutional limitation, what shall and what shall not constitute evidence competent to be used upon the trial of an offender. The protection afforded the witness by the constitution is that of not being a witness against himself. If the act of which inquiry is made do not constitute a crime, or, if made a crime, it have no punishment prescribed for its violation, or be no longer punishable, or if the act be barred by the statute of limitations, with no action pending, or the law have been repealed, or if the witness have been tried for the offense and acquitted, or convicted and satisfied the sentence imposed by the law, he can claim no exemption from answering questions relating thereto. Likewise the witness is deprived of claiming this exemption from testifying if the legislature, by the enactment of an immunity statute, have provided that he shall not be liable to criminal prosecution for any violation of the act about which he may testify, nor his evidence used against him in any criminal proceeding. As to prosecutions for those crimes to which his evidence relates, under the immunity act the witness is in the same position, in so far as there is a possibility of using his evidence against him, as though there were no such crimes provided by statute.

It is urged that the amnesty provided by section 10 is not complete, as it affords no immunity to a stockholder in any such corporation. There is nothing in the record disclosing appellant to be a stockholder,

an officer, or an agent, or otherwise connected with any corporation that might, in any manner, be affected or suffer, as the result of his disclosure as a witness. The constitutional provision was intended for the protection of the witness; "the hurt must be to himself"; he himself must be included in the terms of the law before he can have just grounds for complaint. (*The State v. Smiley*, supra.) However, it was never intended that the immunity afforded the witness by this act should extend to, and protect, the stockholders, officers and agents of a corporation, as such; the immunity extends to the witness alone; it was not contemplated that it would be made use of as a pretext for securing immunity to others. That the immunity afforded the witness, to be complete, must extend to the officers, agents and stockholders of a corporation, as contended by appellant, is too remote.

Section 5 provides, as a punishment for one convicted of a violation of the act, a fine of not less than one hundred dollars nor more than one thousand dollars, and confinement for not less than thirty days nor more than six months. Sections 5 and 6 provide a penalty of one hundred dollars per day for each and every day such violation shall continue after conviction. It is further provided by section 5, that every person, company or corporation who shall violate any of the provisions of the act, be denied the right of, and be prohibited from, doing any business within this state. The last provision contemplates the prohibiting of the continuance of, or engagement in, business in the state only when such business is in violation of the act; it was not intended thereby to prohibit persons from continuing or engaging in any lawful business in the state, not conducted or carried on in violation

of the act. Viewed in the light of the interpretation thus given it, the provision is a valid exercise of leglative power, and is not open to the charge made against it by appellant that it constitutes, in effect, banishment from the state.

The provisions of section 7 that in any civil action there may be pleaded in defense that the plaintiff, or any person interested in the prosecution, has within one year been guilty of a violation of any of the provisions of the act, as held in *Barton v. Mulvane*, 59 Kan. 313, 52 Pac. 883, under a very similar provision of the anti-trust act of 1889 (Laws 1889, ch. 257), contemplates only civil actions relating to, and growing out of, transactions prohibited by the act. It was not intended by the legislature to deprive the litigant of the right to resort to the courts for the protection of property rights and interests not connected with such combinations or trusts. Thus interpreted, the provision is a valid exercise of legislative power, and is not open to the charge of appellant that it constitutes outlawry.

It was the intention of the legislature, by section 10 of the act, to afford the witness complete immunity against criminal prosecution, fines, imprisonment, penalties, and forfeitures, for any violation of the act about which the witness might give evidence upon a proceeding or investigation by the state to acquire information as to violations of the act; and also to afford the witness complete immunity against such testimony's being used against him in any proceeding of a criminal nature. The immunity afforded by the act is coextensive with the constitutional privilege. A statute providing such immunity is sufficient; a witness, thus protected, cannot invoke the constitutional privilege of silence. (*Counselman v.*

*Hitchcock*, supra ; *Brown v. Walker*, supra ; *The People v. Butler Street Foundry*, 201 Ill. 236, 66 N. E. 349 ; *Bradley v. Clark*, 133 Cal. 196, 65 Pac. 395.)

Appellant assigned as a further reason why he should not answer the questions propounded to him that the immunity afforded does not protect him against criminal prosecution, fines and forfeitures for violations of the federal anti-trust law ; that the proceeding before the district court was an investigation to inquire whether there had been a violation of the state anti-trust law ; that appellant, as a witness in the district court upon the inquiry, stated that the product of the mines of Osage county was the subject of both domestic and interstate commerce.

If the product of the mines of Osage county were the subject of interstate commerce, as stated, and appellant, as an operator of these mines, violated the provisions of the federal anti-trust law, and thereby became liable to criminal prosecution, fines and forfeitures thereunder, could he, in an investigation in the state courts to inquire if there had been violations of the state anti-trust law, refuse to testify, if the immunity provided did not protect him against the possibility of criminal prosecutions, fines and forfeitures for violations of the federal anti-trust law ?  It is not to be presumed that the examination, upon inquiry, will go beyond violations of the state law.  If such examination be confined to its legitimate scope, it will not include, but will exclude, all acts which might connect it with interstate commerce, in violation of the federal anti-trust law.  Under its power to regulate interstate commerce the United States may legislate upon the subject of private contracts relating to such commerce, and prohibit combinations, pools, and trusts, so far as they relate to inter-state commerce,

but it has no jurisdiction over combinations, pools, and trusts, relating to commerce wholly within the state ; nor does the United States acquire jurisdiction over that part of a combination or agreement relating wholly to commerce within a state, by reason of the fact that the combination covers and regulates commerce, which is interstate.   In so far as such combinations interfere with interstate commerce, they are under the control of the United States ; in so far as they interfere with commerce wholly within the state, they are subject only to the jurisdiction of the state. (*Addyston Pipe & Steel Co. v. United States*, 175 U. S. 211, 20 Sup, Ct. 96, 44 L. Ed. 136.)   Where two governments like the United States and a state exercise their authority within the same territory, and over the same citizens, the legislation of that which, as to certain subjects, is subordinate should be construed with reference to the powers and authority of the superior government, and not be deemed as invading them, unless such construction be absolutely demanded.   (*Commonwealth v. Gagne*, 153 Mass. 205, 26 N. E. 449, 10 L. R. A. 442.)

In the case of *Brown v. Walker*, supra, Brown, who was auditor of the Alleghany Railway Company, was subpœnaed as a witness to give testimony before a federal grand jury upon an investigation concerning alleged violations of the interstate-commerce act by the railway company.   He refused to testify, claiming that to answer the questions would tend to accuse and criminate him.   He was adjudged to be in contempt.   Proceedings in *habeas corpus* were instituted in the United States circuit court and he was remanded to the custody of the marshal.   An appeal was had to the United States supreme court.   It was claimed there by appellant that the immunity pro-

26—69 KAN.

vided by the interstate-commerce act was insufficient to satisfy the constitutional guaranty of protection against being compelled to be a witness against himself. The immunity provided by the act was by the court held sufficient. Mr. Justice Brown, in delivering the opinion of the court, with reference to the construction of the immunity clause of the act said :

"It can only be said in general that the clause should be construed, as it was doubtless designed, to effect a practical and beneficent purpose—not necessarily to protect witnesses against every possible detriment which might happen to them from their testimony, nor to unduly impede, hinder or obstruct the administration of criminal justice. That the statute should be upheld, if it can be construed in harmony with the fundamental law, will be admitted. Instead of seeking for excuses for holding acts of the legislative power to be void by reason of their conflict with the constitution, or with certain supposed fundamental principles of civil liberty, the effort should be to reconcile them if possible, and not to hold the law invalid unless, as was observed by Mr. Chief Justice Marshall, in *Fletcher v. Peck*, 6 Cranch, 87, 128, 'the opposition between the constitution and the law be such that the judge feels a clear and strong conviction of their incompatibility with each other.'"

It was further claimed, in this same case, that the amnesty provided by the interstate-commerce act, though sufficient to grant immunity from prosecution by the federal courts, did not afford immunity against prosecution in the state courts. In treating the proposition and the improbability of being subjected to the criminal laws of another sovereignty, after having quoted extensively, with approval, from the opinion of Lord Chief Justice Cockburn upon that subject, Mr. Justice Brown said :

"But even granting that there was still a bare possibility that by his disclosure he might be subjected to

the criminal laws of some other sovereignty, that, as Chief Justice Cockburn said in *Queen v. Boyes*, 1 B. & S. 311, in reply to the argument that the witness was not protected by his pardon against an impeachment by the house of commons, is not a real and probable danger, with reference to the ordinary operations of the law in the ordinary courts, but 'a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct.' Such danger it was never the object of the provision to obviate. The same answer may be made to the suggestion that the witness is imperfectly protected by reason of the fact that he may still be prosecuted and put to the annoyance and expense of pleading his immunity by way of confession and avoidance. This is a detriment which the law does not recognize. There is a possibility that any citizen, however innocent, may be subjected to a civil or criminal prosecution, and put to the expense of defending himself, but unless such prosecution be malicious, he is remediless, except so far as a recovery of costs may partially indemnify him. He may even be convicted of a crime and suffer imprisonment or other punishment before his innocence is discovered, but that gives him no claim to indemnity against the state, or even against the prosecutor, if the action of the latter was taken in good faith and in a reasonable belief that he was justified in so doing.''

The anti-trust act of Illinois requires corporations doing business in the state to make and file annually with the secretary of state a verified statement which is termed an "anti-trust affidavit." In *People v. Butler Street Foundry*, supra, a proceeding to recover the penalty of fifty dollars per day for failure to make and file such affidavit, as a defense to such action it was charged that the requirement of the making of the affidavit was a violation of the constitutional provision of the state, that "no person shall be compelled

in any criminal case to give evidence against himself." The act provided immunity against criminal prosecutions for truthful disclosures of matters required to be shown by the affidavit; and by the affidavit a disclosure of any connection of the corporation with any combination, pools, trusts, and the like combines, in restraint of trade or commerce, was required. It was urged that the immunity was not coextensive with the constitutional privilege, and that it did not cover prosecutions under laws of other states or under laws of the United States. In passing upon the validity of the act it was held that, while it might be broad enough to include trusts, pools and combines formed with parties outside the state, yet, in construing the act, the court must consider it as relating to trusts, pools and combines formed within the state. As to the sufficiency of the immunity provision challenged, it was held that it was complete as against prosecution by the federal authorities or by the authorities of other states, as the affidavit required, to the making of which immunity was extended, need relate only to trusts, pools and combines within the state. In making reference to the sufficiency of the immunity afforded by the act, as applied to violations of the federal law, the court said :

"The possibility that the affidavit required by section 7a of the anti-trust act of 1891 might contain disclosures tending to show a violation of the anti-trust law of some other state, or of the United States, is not a real and probable danger of criminal prosecution within the constitutional privilege against giving self-incriminating evidence."

The anti-trust law is a valid exercise of legislative power, and is not violative of the fourteenth amendment to the federal constitution, as claimed by appellant. Section 10 of the act contemplates that, in the

proceeding or investigation before the district court or the judge thereof, to discover if there have been violations of the state anti-trust law, the inquiry will be confined to violations of that law. The record discloses that the examination of appellant was confined to its legitimate scope, within which the immunity afforded him by section 10 was coextensive with the constitutional privilege invoked for his protection. The possibility that his answers to the inquiries might disclose violations of the federal law, and the evidence thus given be used against him in a criminal prosecution for a violation of that law, was not a real and probable danger.

Appellant should have answered the questions asked him upon the inquiry. The judgment of the court below is affirmed.

All the Justices concurring.