BOATMEN'S BANK OF ST. LOUIS v. FRITZLEN et al.

(Circuit Court, D. Kansas, Second Division. December 13, 1909.)

No. 1,063.

1. CONTRACTS (§ 136*)—ILLEGAL CONSIDERATION—EFFECT.

A contract having for its consideration, in whole or in part, that which is in itself unlawful, may not be enforced.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700; Dec. Dig. § 136.*]

2. ASSIGNMENTS (§ 100*)—DEFENSES AGAINST ASSIGNEE.

Any defense which might be interposed against the enforcement of a nonnegotiable contract is alike available against the assignee thereof.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 177; Dec. Dig. § 100.*]

3. MONOPOLIES (§ 21*)—FURTHERANCE—CONTRACTS.

While all contracts made with the express purpose of furthering the object of an unlawful combination prohibited by law are unenforceable,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the legal prohibition does not extend to those, the enforcement of which only indirectly or incidentally furthers the prohibited object.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 21.*

Validity of monopolistic contracts as affected by public policy, see note to Cravens v. Carter-Crume Co., 34 C. C. A. 486.]

4. Monopolies (§ 21*)—Anti-Trust Law—Application.

Laws Kan. 1897, p. 481, c. 265, prohibits contracts in furtherance of trusts, monopolies, or combinations, and section 7 declares that any contract or agreement in violation of the act shall be void and unenforceable in any of the courts of the state, and that, when any civil action shall be commenced in any court, it-shall be lawful to plead in defense thereof that plaintiff, or any other person interested, is at the time, or has within a year next preceding the date of the commencement of the action, been guilty, either as principal, agent, or representative, or consignee, of a violation of the act. *Held,* that such section as construed by the Kansas Supreme Court relates only to transactions prohibited by the act, and hence, where a live stock commission firm advanced money to defendant, who executed notes secured by a mortgage for its repayment, including compensation to be paid to the commission company for services rendered and to be performed for defendant in selling or purchasing cattle, it was no defense to an action on the notes and to foreclose the mortgage that the commission company was a member of an illegal combination of live stock commission merchants which was in violation of such act, which was neither a party to the proceeding, nor interested in the transaction.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 21.*

Rights and liabilities of parties contracting with trusts or combinations in restraint of trade, see note to Chicago Wall Paper Mills v. General Paper Co., 78 C. C. A. 612.]

5. Corporations (§ 657*)—Regulation—Statutes—Repeal.

Since Laws Kan. 1901, p. 238, c. 127, regulating foreign corporations and permitting them under certain conditions to take and enforce liens on property within the state, contains no express prohibition against a foreign corporation not having complied with the act, taking a mortgage lien on property within the state, and prescribes no penalty for its so doing, the taking of such mortgage did not constitute such violation of the law as to render the mortgage unlawful, nor prevent foreclosure thereof after the statute had been repealed.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 657.*]

Action by the Boatmen's Bank of St. Louis against D. G. Fritzlen and others, on exception to the answer of defendants Fritzlen. Exceptions 3 and 4 taken to part of paragraph 7 and to the entire matter pleaded in paragraph 8, and to paragraph 10, sustained.

Botsford Deatherage & Creason, for plaintiff.

D. R. Hite and H. J. Bone, for defendants.

POLLOCK, District Judge. Complainant presents its amended bill of complaint to foreclose a mortgage on real property executed by defendants Fritzlen, for an accounting, and decree for amount due from defendant D. G. Fritzlen to complainant thereunder. Defendants Fritzlen have answered this bill, and complainant has taken certain exceptions thereto, which have been argued and submitted for decision.

The first exception to be noticed arises on the following state of facts, pleaded in paragraphs 7 and 8 of the answer in defense of this suit: That on November 15, 1889, defendant D. G. Fritzlen made,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

executed, and delivered to Elmore-Cooper Live Stock Commission Company, a corporation of the state of Missouri, doing a live stock business at the city of Kansas City (hereinafter called the "commission company"), his four nonnegotiable promissory notes, aggregating in amount $19,046.07. That in said amount there was included the sum of $3,000 as commissions earned and to be earned by the commission company in the purchase and sale of cattle for defendant D. G. Fritzlen, at the price and sum of 50 cents per head. That of even date with said promissory note Fritzlen and wife made, executed, and delivered to the commission company their chattel mortgage on a large number of cattle to secure payment of the promissory notes. Thereafter the commission company assigned and delivered said notes to complainant, who thereafter, in renewal of said four promissory notes and the advancement by complainant to defendants Fritzlen, or paid for their benefit, the sum of $9,844, the promissory note for $32,000, and real estate mortgage in suit, were executed and delivered to the payee therein named, as agent acting for complainant, who thereafter indorsed and delivered the same without consideration to complainant.

It is further averred, at the time said four nonnegotiable notes and chattel mortgage were executed and delivered to said commission company, that company was a member of an association or combination of live stock commission firms known as the "Kansas City Live Stock Exchange." The by-laws, acts, and practices of such association, which are fully pleaded in the answer, made said association unlawful and illegal under the provisions of the anti-trust act of this state. Chapter 265, p. 181, Laws 1897. Wherefore it is averred, by reason of the said four promissory notes, including the sum of $3,000 as commission, payable to said commission company, and as said notes and mortgage were made in and governed by the laws of this state, and as said commission company was a member of said unlawful combination or association, therefore it is averred said promissory notes and mortgage were illegal, void, and nonenforceable against the makers by the original payee therein, the commission company. And further, as said promissory notes were in form nonnegotiable, whatever defense the makers thereof might have presented as against the original payee, the commission company was not cut off by the transfer to complainant, and therefore the vice of illegality inhering in the original transaction still obtains to the benefit of defendants against this suit brought by complainant on the renewal note and mortgage in suit, and, as the illegal part of the consideration therein expressed is incapable of separation from the valid, all must be held invalid, or at least to the extent of the amount of the four original promissory notes transferred to complainant.

The anti-trust act of this state, in so far as thought applicable or important, provides as follows:

"Section 1. A trust is a combination of capital, skill, or acts, by two or more persons, firms, corporations, or associations of persons, or either two or more of them, for either, any or all of the following purposes: First, to create or carry out restrictions in trade or commerce or aids to commerce, or to carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of the state. Second, to increase or reduce the price

of merchandise. produce or commodities, or to control the cost or rates of insurance. Third, to prevent competition in the manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, or to prevent competition in aids to commerce. Fourth, to fix any standard or figure, whereby its price to the public shall be, in any manner, controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, use or consumption in this state. Fifth. to make or enter into, or execute or carry out, any contract, obligation or agreement of any kind or description by which they shall bind or have to bind themselves not to sell, manufacture, dispose of or transport any article or commodity, or article of trade, use, merchandise, commerce or consumption below a common standard figure or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graded figure, or by which they shall in any manner establish or settle the price of any article or commodity or transportation between them or themselves and others, to preclude a free and unrestricted competition among themselves or others in transportation, sale or manufacture of any such article or commodity, or by which they shall agree to pool, combine or unite any interest they may have in connection with the manufacture, sale or transportation of any such article or commodity, that its price may in any manner be affected. And any such combinations are hereby declared to be against public policy, unlawful and void."

"Sec. 5. Every person, company or corporation within or without this state, their officers, agents, representatives, or consignees, violating any of the provisions of this act, within this state, are hereby denied the right, and are hereby prohibited from doing any business within this state.

"Sec. 6. Each and every person, company or corporation, their officers, agents, representatives, or consignees who, either directly or indirectly, violate any of the provisions of this act shall be deemed guilty of a misdemeanor and on conviction thereof shall be subject to a fine of not less than one hundred dollars nor more than one thousand dollars, and shall be imprisoned not less than thirty days nor more than six months. *  *  *

"Sec. 7. Any contract or agreement in violation of any of the provisions of this act shall be absolutely void and not enforceable in any of the courts of this state, and when any civil action shall be commenced in any court of this state, it shall be lawful to plead in the defense thereof that the plaintiff or any other person interested in the prosecution of the case is at the time or has within one year next preceding the date of the commencement of any such action been guilty, either as principal, agent, representative, or consignee, directly or indirectly, of a violation of any of the provisions of this act, or that the cause of action grows out of any business transaction in violation of this act."

The argument made against the validity of the original promissory notes is this: As they were given to the member of a voluntary association or combination, the rules, acts, and practices of which association made its existence unlawful because in violation of the anti-trust laws of the state, therefore a member of such unlawful association, by the terms of the act quoted, may not enforce a contract made to it by a citizen of the state; a portion of the consideration of such contract being for compensation earned by such member of the unlawful association in the transaction of its business, wherein the agreed price among the members of the association for the doing of the service performed is charged in the contract. And much reliance is placed on the decision of the Supreme Court of this state in State v. Wilson, 73 Kan. 343, 80 Pac. 639, 84 Pac. 737, 117 Am. St. Rep. 479, upholding this view of the act. However, it may be said that case was decided in the year 1906, long after the contracts here under consideration were entered into by the parties, hence that decision is not controlling here if opposed to the settled course of decision of the courts at the

time the contracts were made. In considering this question it will not be possible to review the many authorities found in the elaborate briefs of solicitors for the respective parties. With many of the general and well-established principles of the law stated and relied upon by solicitors there can be no controversy. That an enforceable contract cannot arise out of the doing of an act by law prohibited is conceded.

That a contract having for its consideration, in whole or in part, that which is in itself unlawful, may not be enforced, is conceded. That any defense which might be interposed against the enforcement of a nonnegotiable contract is alike available against the assignee of such contract is conceded. And many like familiar propositions presented in argument.

However, the question presented is: Was it unlawful for defendant Fritzlen to borrow money from the commission company and to execute his promissory notes secured by mortgage for its repayment, wherein there was included compensation to be paid the commission company for services performed or to be performed by that company for the maker of the notes in selling or purchasing cattle, because of the fact the commission company was a member of an association formed in violation of the anti-trust act of this state, as that act had been construed by the Supreme Court of the state at the time the transaction occurred, or, if it had not been construed by the Supreme Court at that time, as it should now be construed by this court, in harmony with the rulings of those courts whose decisions are controlling here.

If the contracts were made in furtherance of the object or purpose of the unlawful combination, then it is clear they may not be enforced, for, in such case, the prohibition of the law attaches to them and makes them unlawful. While to all contracts made with the express intent of furthering the object and purpose of that by law prohibited, and while to all contracts which from their very nature will be presumed to have been made with such intent, the direct and necessary effect of which is to further the purpose of that which is in violation of law, the prohibition of the law attaches and renders nonenforceable, yet the prohibition of the law does not extend and attach to all contracts, the enforcement of which may indirectly or incidentally, further the object and purpose of that which is by law prohibited. And the reason for the rule is plain and easy of comprehension. For example, I may not either directly or indirectly employ another to commit a crime or violate the law, for to so do encourages the commission of crime and law breaking, and, if I do so, the person employed by me may not enforce his contract for compensation against me. But, if I borrow money from another, or employ him to perform for me a special service, I may not defend against the enforcement of my contract against me by alleging and offering to prove the person I contracted with to be a member of a band of counterfeiters and made his money in such unlawful business, or that he obtained the special knowledge necessary to perform the service which I employed him to perform for me in the pursuit of an unlawful or criminal occupation. It is sufficient that my contract with him be legal, although the borrowed money I am compelled to repay, or the sum I may be required to pay him for his

service, may benefit him and may be by him employed in furtherance of his unlawful occupation, and thus indirectly and incidentally further such unlawful pursuit by him. And this for the reason that courts of justice will not inquire into the character, reputation, or business of parties litigant before them except in so far as the nature of the controversy presented involves such inquiry. If relief be sought in a court of justice, and reliance for such relief be predicated on a state of facts which discloses the transaction involved arose out of a violation of the law, or the granting of the relief sought is contrary to public policy as declared by the law, or the direct and necessary effect of the granting of the relief sought will be to further the object and purpose of that by law prohibited, the court will decline to grant the relief sought.

Otherwise it is the concern of the government or state, through its lawfully constituted authorities, to inquire of, apprehend, and bring to justice those who violate the mandates of the law.

Tested by these general principles, were the original notes and mortgage in the hands of the commission company nonenforceable by that company against defendant makers? It is too clear for argument the transaction out of which these contracts grew was entirely innocent and lawful at the common law. Therefore, if the defense pleaded to which exception has been taken by complainant be sufficient in law, it must be so because of section 7 of the anti-trust act of the state above quoted. This section, as construed by the Supreme Court of the state in State v. Jack, 69 Kan. 387, 76 Pac. 911, 1 L. R. A. (N. S.) 167, relates only to transactions prohibited by the act. It is there said:

"The provisions of section 7 (Gen. St. 1909, § 7870) that in any civil action there may be pleaded in defense that the plaintiff, or any person interested in the prosecution, has within one year been guilty of a violation of any of the provisions of the act, as held in Barton v. Mulvane, 59 Kan. 313, 52 Pac. 883, under a very similar provision of the anti-trust act of 1889 (Laws 1889 [p. 389] c. 257), contemplates only civil actions relating to, and growing out of, transactions prohibited by the act. It was not intended by the Legislature to deprive the litigant of the right to resort to the courts for the protection of property rights and interests not connected with such combinations or trusts. Thus interpreted, the provision is a valid exercise of legislative power, and is not open to the charge of appellant that it constitutes outlawry."

Adopting this as the true construction of section 7, what is the only logical conclusion that may follow when applied to the facts here pleaded by way of defense?

Defendants Fritzlen, as makers of the original notes and mortgage, had no connection whatever with the Kansas City Live Stock Commission Company, the unlawful combination. The commission company which loaned the money to defendants and performed or agreed to perform the service for which the commissions included were agreed to be paid was a member of such unlawful combination. The unlawful combination itself, the Kansas City Live Stock Commission Company, had no connection with the contracts, no interest therein, and is not a party to this litigation. Therefore, conceding such unlawful combination might have been punished under the provisions of the act, and further conceding the inability of that organization to enforce any contract made by it arising from or connected with the business of

its organization, and, further, conceding any contract made between the unlawful combination itself and the commission company growing out of or connected with its membership in or association with that combination, unlawful, hence unenforceable, yet the question remains: How does the fact that the commission company was a member of the unlawful combination affect its right of private contract with defendants Fritzlen, entirely disassociated from its relation to the unlawful combination, more than if it should be averred and proven the commission company, at the time the contracts were made by defendants with it, was a member of a band of counterfeiters, horse thieves, or other criminal organization.

The insufficiency of the facts pleaded to constitute a defense becomes, to my mind, clear, from the reasoning employed in a few of the many cases on the briefs of solicitors for the respective parties. Thus, in Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, the sewer pipe company was a corporate citizen of the state of Ohio, and a combination, unlawful under both the federal anti-trust act and the anti-trust act of the state of Illinois. It was doing business in the state of Illinois, and made contracts for the sale and delivery of sewer pipe with Connolly, and with one Dee, both citizens of Illinois. The sewer pipe having been delivered and received under these contracts, to enforce payment of the contract price, the unlawful combination brought actions in the Circuit Court of the United States for the Northern district of that state. Defendant Connolly in the action against him pleaded facts which it was contended rendered his contract for payment of the purchase price of the pipe furnished void at the common law. This defense was denied. He also made the further contention the contract was nonenforceable because entered into in violation of the federal anti-trust act. This defense was also denied him. He further pleaded the contract made by him with the unlawful combination was in violation of the terms of the anti-trust act of the state of Illinois. This contention was upheld, but it was upheld on the ground that the contract was one made by him directly with the unlawful combination itself and growing out of the transaction of the very business which it was formed to conduct; therefore could not be enforced by it. However, the act was held unconstitutional and this defense denied on that ground. Mr. Justice Harlan, delivering the opinion of the court, quotes with approval therein from National Distilling Co. v. Cream City Importing Co., 86 Wis. 352, 56 N. W. 864, 39 Am. St. Rep. 902, as follows:

"The first defense does not deny any allegation of the complaint, but the substance of it is that the sale and delivery of the goods in question to the defendant was void as against public policy, because the vendor was at the time a member of an unlawful trust or combination, formed to unlawfully interfere with the freedom of trade and commerce and in restraint thereof and to accomplish the ends therein set forth. * * * Conceding, for the purposes of this case, that the trust or combination in question may be illegal and its members may be restrained from carrying out the purposes for which it was created by a court of equity in a suit on behalf of the public, or may be subject to indictment and punishment, there is, nevertheless, no allegation showing, or tending to show, that the contract of sale between the plaintiff and defendant was tainted with any illegality, or was contrary to public policy. The argument, if any the case admits of, is that, as the plaintiff was a mem-

ber of the so-called 'trust,' or 'combination,' the defendant might voluntarily purchase the goods in question of it at any agreed price, and convert them to its own use, and be justified in a court of justice in its refusal to pay the plaintiff for them, because of the connection of the vendor with such ·trust or combination. The plaintiff's cause of action is in no legal sense dependent upon, or affected by, the alleged illegality of the trust or combination, because the illegality, if any, is entirely collateral to the transaction in question, and the court is not called upon in this action to enforce any contract tainted with illegality, or contrary to public policy. The mere fact that plaintiff is a member of a trust or combination, created with the intent and purposes set forth in the answer, will not disable or prevent it in law from selling goods within or affected by the provisions of such trust or combination, and recovering their price or value. It does not appear that it had stipulated to refrain from such transaction. A contrary doctrine would lead to most startling and dangerous consequences."

In the more recent case of Continental Wall Paper Co. v. Voight & Sons Co., 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486, which was an action on contract brought to recover the purchase price of wall paper purchased, the plaintiff was a combination formed and existing in violation of the federal anti-trust act. Defendant was a member of the unlawful combination. The contract in that case was declared unlawful and nonenforceable because brought by the unlawful combination itself against· a member thereof on a contract growing out of and connected with the unlawful association of defendant with the plaintiff. Mr. Justice Harlan, delivering the opinion of the court, after referring to the Connolly Case, said:

"The case now before us is an entirely different one. The Continental Wall Paper Company seeks, in legal effect, the aid of the· court to enforce a contract for the sale and purchase of goods which, it is admitted by the demurrer, was in fact and was intended by the parties to be based upon agreements that were and are essential parts of an illegal scheme. We state the matter in this way, because the plaintiff by its demurrer admits for the purposes of this case the truth of all the facts alleged in the third defense. It is admitted by the demurrer to that defense that the account sued on has been made up in execution of the agreements that constituted or out of which came the illegal combination formed for the purpose and with effect of both restraining and monopolizing trade and commerce among the several states.

"The present suit is not based upon an implied contract of the defendant company to pay a reasonable price for goods that it purchased, but upon agreements, to which both the plaintiff and the defendant were parties, and pursuant to which the accounts sued on were made out, and which had for the object, and which it is admitted had directly the effect, to accomplish the illegal ends for which the Continental Wall Paper Company was organized. If judgment be given for the plaintiff, the result, beyond all question, will be to give the aid of the court in making effective the illegal agreements that constituted the forbidden combination. These considerations make it evident that the present case is different from the Connolly Case. In that case the court regarded the record as presenting the question whether a voluntary purchaser of goods at stipulated prices, under a collateral, independent contract, can escape an obligation to pay for them upon the ground merely that the seller, which owned the goods, was an illegal combination or trust. We held that he could not, and nothing more touching that question was decided or intended to be decided in the Connolly Case. The question here is whether the plaintiff company can have· judgment upon an account which, it is admitted by demurrer, was made up, within the knowledge of both seller and buyer, with direct reference to and in execution of certain agreements under which an illegal combination, represented by the seller, was organized. Stated shortly, the present case is this: The plaintiff comes into court admitting that it is an illegal combination whose operations restrain and monopolize commerce

and trade among the states and asks a judgment that will give effect, as far as it goes, to agreements that constituted that combination, and by means of which the combination proposes to accomplish forbidden ends. We hold that such a judgment cannot be granted without departing from the statutory rule, long established in the jurisprudence of both this country and England, that a court will not lend its aid, in any way, to a party seeking to realize the fruits of an agreement that appears to be tainted with illegality, although the result of applying that rule may sometimes be to shield one who had got something for which as between man and man he ought, perhaps, to pay, but for which he is unwilling to pay.

"In such cases the aid of the court is denied, not for the benefit of the defendant, but because public policy demands that it should be denied without regard to the interests of the individual parties. It is of no consequence that the present defendant company had knowledge of the alleged illegal combination and its plans or was directly or indirectly a party thereto. Its interest must be put out of view altogether when it is sought to have the assistance of the court in accomplishing ends forbidden by the law."

In the light of the many decisions touching the question here under consideration, the promissory notes made by defendant D. G. Fritzlen and the mortgage made by Fritzlen and wife to the commission company were valid and enforceable instruments in the hands of that company, and hence in the hands of complainant, presented in the form of the renewal note and mortgage in suit, notwithstanding the recent decision of the Supreme Court of the state in State v. Wilson, supra, which, as has been seen, was rendered after the rights of complainant had attached. It is therefore ordered complainant's exceptions Nos. 3 and 4 taken to a part of paragraph 7, and the entire matter pleaded in paragraph 8 of the answer, be sustained.

The exception to paragraph 10 of the answer, in which it is pleaded in bar of this suit that complainant, a foreign corporation, not having complied with the provisions of chapter 127, p. 238, Laws 1901 of the State, possessed no power to take and hold the mortgage, the lien of which is sought to be foreclosed by this suit, remains to be considered.

The title and body of that act reads, as follows:

"An act concerning private corporations, and to allow foreign corporations to take, receive, purchase, hold and enforce liens upon property in this state.

"Section 1. That foreign corporations, upon complying with the provisions of this act, shall have the right to receive, take, purchase, and hold, by mortgage or otherwise, any securities and liens executed, given or transferred, or so intended to represent or secure loans upon or purchase money of lands or other property situate or being within this state, and to sell, assign, transfer and to sue upon, foreclose or otherwise enforce the same.  *  *  *

"Sec. 2. Every such corporation shall, before being entitled to so take such lien and enforce the same, or any lien now held, shall pay to the secretary of the charter board of this state, created in chapter 10 of the laws of 1898, a fee of one hundred dollars, and file with such secretary of such board the written consent to be sued and for service of process to be had and made provided in chapter 10, in section 3; and the receipt and certificate of such secretary for such payment and of such filing of such written consent shall be received in all cases as sufficient prima facie evidence of compliance with the provisions hereof and of the incorporation of said corporation.

"Sec. 3. Such corporation, shall at the end of every five years after first complying with this law, pay to the secretary of said board an additional fee of one hundred dollars, and in default thereof its authority and power hereunder shall be held suspended until such payment is made, but no longer."

From a reading of the foregoing act, it will be noticed it contains no express prohibition against complainant, a foreign corporation, tak-

ing the mortgage lien on real property in this state sought to be fore-closed, and it prescribes no penalty for complainant having done so. Therefore complainant did not violate the law in such manner as to render the mortgage taken unlawful. The purpose of the act was to provide for the regulation of foreign corporations.

In view of the fact that this act was repealed before the commence-ment of this suit, and foreign corporations are now by express author-ity of the Legislature of the state entitled to take and hold real estate mortgage liens, and from the fact the taking of the mortgage when taken was not an act done in violation of law, and therefore unlawful, and in view of the decisions of the Supreme Court of this state con-struing the provisions of that act, as found in State v. Book Co., 69 Kan. 1, 76 Pac. 411, 1 L. R. A. (N. S.) 1041, and Hamilton v. Reeves & Co., 69 Kan. 844, 76 Pac. 418, and the general principles of the law as announced in Blodgett v. Lanyon Zinc Co., 120 Fed. 893, 58 C. C. A. 79; Butler Bros. Shoe Co. v. U. S. Rubber Co., 156 Fed. 1, 84 C. C. A. 167; Dunlap v. Mercer, 150 Fed. 545, 86 C. C. A. 435; Iowa Lillooet Gold Min. Co. v. U. S. Fidelity & Guaranty Co. (C. C.) 146 Fed. 437; Colby v. Cleaver (C. C.) 169 Fed. 206—no extended discus-sion of the question presented need be indulged. The terms of the statute were not complied with during its existence as a law of the state by complainant; but the failure of complainant to so do will not, in my judgment, be now held a bar to its rights to prosecute this suit. The exception therefore taken to paragraph 10 of the answer must be sustained.

It is so ordered.