# CIRCUIT COURT OF BALTIMORE CITY.

Filed May 12, 1913.

WILLIAM MASON SHEHAN, STATE INSURANCE COMMISSIONER,
VS.
THE LORD CALVERT MUTUAL BENEFIT SOCIETY OF BALTIMORE CITY.

*A. D. Foster* for plaintiff.
*Thos. G. Hayes, Daniel B. Chambers* for defendant.

BOND, J.—

The only steps provided for by the statute under and in accordance with which this proceeding has been taken by the Insurance Commissioner, are these:

The Commissioner, upon coming to the belief that any insurance company is insolvent or fraudulently conducted that its assets are not sufficient for carrying on its business, or that it is not complying with the statutes, is obliged to make complaint upon that conclusion to the judge of one of the circuit courts.

Upon requisition of the Commissioner, the judge is then required to appoint a commissioner to investigate and make a report to the judge of the conditions they find to exist.

Then the judge, if he finds that the report sustains the commissioner's charges of insolvency, fraud, neglect or abuse, is required to issue, at once, an injunction suspending the business of the company.

With that the particular proceeding and all functions of the court in connection with the matter brought up in that proceeding seem to come to an end. The statute provides for additional proceedings by the commissioner when it appears to him upon examination that the company is insolvent or fraudulently conducted; and provides for other proceedings by himself or other persons. But the proceeding we are now concerned with is, as far as the statute provides, brought to a close with the issue of the injunction and the suspension of the company's business.

That proceeding is, therefore, an investigation, entirely *ex parte*, without any hearing of the company or its representatives, followed by a summary termination of the company's business if the commission's report shows the specified grounds for it. The Insurance Commissioner followed out this theory of the proceeding and added a prayer to his bill of complaint that after the suspension of the company's business, a subpoena be issued to it directing it to answer showing why it should not be dissolved and its business wound up. While the difference is, perhaps, not material, it may be questioned whether the statute would permit the Commissioner thus to extend and convert this present proceeding into one upon bill and answer, with both parties appearing, instead of instituting a new proceeding for the same purpose in one of the forms described by the statute. The prayer for a subpoena in such further contingent proceeding does not, however, make the proceeding thus far a plenary one. No subpoena should have issued, and the insurance company under investigation has as yet no right to a hearing. It seems that the issue of the subpoena upon the filing of the

bill of complaint must have been due to a misunderstanding on the clerk's part. The writ of subpoena heretofore issued will therefore be quashed, and the demurrer by the insurance company will be stricken out. Counsel for both parties, as requested at the trial table, will be given an opportunity to prepare papers and orders necessary to conform to the court's conclusions before any decree is signed on the bill.

It was urged by counsel for the insurance company that if the statute must be construed to provide for such summary, *ex parte* termination of the business of a company, then it is unconstitutional as it entails a deprivation of liberty and property without due process of law. It may, perhaps, be questioned, too, whether it is not in violation of the Maryland Constitution in requiring the performance of a non-judicial, ministerial function by a court of law.

Church vs. Town of South Kensington, 22 R. I. 381.

State vs. Jack, 69 Kan. 387, 1 L. R. A (N. S.) 167.

Houseman vs. Kent, Circuit Judge, 58 Mich. 364.

But I have concluded that both these objections are met by the decision of the Court of Appeals in Monumental Ins. Co. vs. Wilkinson, 100 Md. 31, which holds the provision complained of free from constitutional objections. The first objection, that of the denial of due process of law, was specifically raised upon the record and briefs in that case; and the decision of the court seems to me to apply to the other objection, too.

The court has, then, only to consider whether the report of the commission sustains the charges of the insurance commissioner. Those charges, as set out in the bill of complaint, are:

1. That notwithstanding its incorporation as a mutual benefit association, and notwithstanding it does not maintain the reserve required by law for companies issuing ordinary "old line" insurance policies, this company is in fact issuing insurance upon flat rate premiums instead of on the assessment plan.

2. That the law (Section 176 of Article 23 Code P. G. L.) requires that a mutual or co-operative company issuing policies or certificates in amounts such as are stipulated for in this com-

pany's policies, shall deposit $50,000 in interest-bearing securities to secure the payment of policies issued; and that this company has not made such a deposit.

3. That in violation of law the company is doing business without a license.

In my judgment the first and third charges as made by the Insurance Commissioner, and as just numbered, are sustained by the report of the commission appointed in this proceeding. The second charge is, in my judgment, also sustained. But on that charge a few words more will be necessary.

Counsel for Insurance Commissioner and for the company at bar, both expressed in the argument a desire that the court construe Sections 175 and 176 of Article 23 of the Code, and determine whether the law as there set out requires mutual or co-operative companies which issue certificates for a maximum of less than five hundred dollars, to make the deposit of $50,000 in securities mentioned in Section 176. And the court has had the benefit of full argument upon that point. My conclusion is that Sections 175 and 176 do not require the deposit by companies of that description. This seems to follow from the express application of the requirement only to companies issuing larger certificates, in Section 175, where the two classes of companies are contrasted. And it follows more clearly, perhaps, after a reading of Section 175 with Section 176 in its original form, that of the Act of 1888, ch. 424, in which the requirement was only that the company referred to have $500 in assets. This smaller requirement seems to me to make the distinction according to the amounts of certificates, in Section 175, more easily understood. Section 147, which provides for the change of a mutual company, to a stock company, seems clearly to contemplate that there may be mutual companies in business under the law without assets. "The assets, if any," it says, "and the liabilities of the mutual company shall thereupon be and become the assets and liabilities of the stock company." And obviously a company without assets could not be subjected to a requirement that it deposit $50,000 in securities.

But the report of the commission in this proceeding, as has been stated, shows that this company issues ordi-

262

nary life policies. As such a company it has violated the law in not making the deposit. The findings of the commission as to the company's solvency, and the sufficiency of its assets for carrying on its business are outside of the charges in the Insurance Commissioner's complaint, on which the court's action is to be based, according to the letter of the statute. As those findings give further ground for invoking the action of the court under the Statute, however, they have been considered as confirming the court's conclusion on the prayers of the bill.

The injunction suspending the business of the Lord Calvert Mutual Benefit Society of Baltimore City will be issued.