No. 44,359

Val J. Brown and Josephine Brown, *Appellees,* v. East Side National Bank of Wichita, a Kansas Corporation, and H. Cornell Smith, *Appellants* and *Cross-Appellees,* and Robert Lightner, *Cross-Appellant.*

(411 P. 2d 605)

Opinion filed March 5, 1966.

*Charles E. Jones,* of Wichita, argued the cause, and *Mark H. Adams, Wm. I. Robinson, J. Ashford Manka, Clifford L. Malone, Mark H. Adams, II, John S. Seeber, Floyd E. Jensen, Philip L. Bowman, Robert Hall* and *Joe Rolston,* of counsel, all of Wichita, were with him on the briefs for the appellant and cross-appellee, East Side National Bank of Wichita.

*LeRoy Warner,* of Wichita, argued the cause, and *Laurence S. Holmes* and *T. L. O'Hara,* both of Wichita, were with him on the briefs for the cross-appellant, Robert Lightner.

*Chester I. Lewis,* of Wichita, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

Hatcher, C.: This appeal stems from a controversy over the application of funds to the payment of a promissory note and the liability of a co-signer thereon.

On March 23, 1961, the plaintiffs, Val J. and Josephine Brown, entered into a construction contract for additions and improvements to their residence in Wichita, Kansas, with the Bontz Construction Company, Inc., a corporation wholly owned by Antoine Bontz. The total cost of the improvements specified in the agreement was $18,890, of which $2,000 was paid on execution of the contract. An additional $8,000 was to be paid upon completion of the framing on or about May 15, 1961, and the balance of $8,890 was to be paid upon completion of the improvements on or about July 1, 1961, at which time the property was to be delivered to plaintiffs by the construction company free and clear of incumbrance.

Sometime after execution of the construction contract Bontz approached the defendant, East Side National Bank, for a loan. He negotiated with Arthur Smith, a vice-president of the bank, and offered the construction contract as collateral. Work was in progress at the time the loan was first discussed. The payments to be made under the contract between the Browns and Bontz were to be assigned as security for the loan.

The Browns had arranged with Southwest Citizens Federal Savings and Loan Association for a loan of $17,500 to finance the construction costs. Bontz started construction on or about April 1, 1961.

Bontz had asked the Browns several times to sign an acceptance of the assignment of monies to be paid under the contract to the Bank. The Browns were hesitant to execute any other instrument that would involve them because they had learned that Bontz was not in a firm financial condition. Val J. Brown finally signed the acceptance on April 13, 1961, at the bank after Mr. Young of the Southwest Citizens Federal Savings and Loan Association said it would be all right to do so "but to make sure he obtained a performance bond." Josephine's signature was obtained later.

At Val J. Brown's insistence the following was written on the acceptance of the assignment by Bontz in the presence of Mr. Arthur Smith of the bank: "Subject to performance bond to cover said contract."

The Bank then refused to make the loan to Bontz without a co-signer and Robert Lightner's signature was obtained. More detailed facts pertaining to the acquisition of Lightner's signature will be presented when that issue is reached in the opinion.

The Bank made the loan to Bontz on April 14, 1961, taking a promissory note. Lightner signed the note as co-signer with Bontz

Construction Company, Inc., by Antoine Bontz as principal obligor and by Antoine Bontz individually.

The Bank discounted the promissory note which was in the face amount of $13,025, and the net proceeds of $12,750 were distributed at the direction of Bontz—$4,400 was deposited to the credit of Bontz and his wife, $350 to the credit of the Bontz apartment account and the remainder $8,000, was credited to the account of the Bontz Construction Company.

Subsequently on May 10, 1961, upon completion of the framing of the structure, Val J. Brown authorized the Savings and Loan Association to pay $8,000 to Bontz and the Bank, pursuant to the construction contract and the acceptance agreement. A check for $8,000 payable to the Bontz Construction Company, Inc., and the East Side State Bank, was delivered to Bontz who took it to the Bank and gave it to Arthur Smith. After some discussion Smith agreed to apply $6,000 to the promissory note and to surrender the remaining $2,000 to Bontz.

After May 10, 1961, work on the construction project began to slow down. The Bontz Construction Company, Inc. retired from the job in about mid-July, and the corporation and Bontz dishonored the note which became due on July 13, 1961.

Labor and material liens were filed against the Brown's property in the amount of $21,000. Bontz took out bankruptcy.

The Browns brought an action against the Bank to recover the $8,000 paid on May 10, 1961. The Bank cross-petitioned against Lightner, the co-signer on the $13,025 note, for such amount as remained due after the controversy between the Bank and the Browns was disposed of, and moved to have Lightner made a party defendant, which was done.

The case was tried to a jury. The trial resulted in a judgment in favor of the Browns and against the Bank for the $8,000, with interest, and a judgment in favor of the Bank against Lightner for the face amount of the note plus interest.

The Bank has appealed from the judgment in favor of the Browns and Lightner has appealed from the judgment in favor of the Bank on the note.

We will first consider the questions raised by the Bank on its appeal.

The appellant first makes the unique contention that:

"Browns did not allege or prove a cause of action for the reason that the $8,000.00 they released by check to Bontz and Bank was not their money but

was money Browns owed to Bontz unconditionally which could be used or applied in any manner Bontz and Bank determined."

The jury found, and there was ample evidence to support the finding, that the Bank agreed or represented to Val J. Brown "that it would accept the assignment of the Browns' money only on the condition that Bontz would be covered by a performance bond."

The check for $8,000 was made payable to Bontz and the Bank jointly. The Bank had no right to accept the check unless Bontz obtained the performance bond. Having wrongfully cashed the check, to which it had no right under its agreement with the Browns, and appropriated the proceeds to its own use by crediting the note of Bontz, the Bank is in no position to say that it should not return the money to the Browns.

Conceding as contended by appellant that an assignment of monies to become due does not require acceptance in order to bind the debtor but it is only necessary that he had notice of the assignment (6 Am. Jur. 2d, Assignments, § 88, p. 269), however, where an assignee seeks a written acceptance from the debtor and a written acceptance is made subject to a condition, the debtor will not be bound unless the condition is performed.

The Bank next contends that the trial court should render judgment for the Bank as a matter of law because the Browns had waived or were estopped to assert the failure of Bontz to post a performance bond, and further that issue of waiver or estoppel should have been submitted to the jury under proper instructions.

We are inclined to believe that these questions were disposed of in the court below and that counsel for appellant acquiesced in the court's ruling. After the trial court had indicated, in connection with the instructions, that he was not going to submit the question of waiver to the jury, the following colloquy took place between the court and counsel for the Bank:

"MR. JONES: You don't think there is enough in here on the waiver?
"THE COURT: No, I don't.
"MR. JONES: I can't argue that?
"THE COURT: I don't think so. As I remember all you had. . . .
"MR. JONES: We got a check.
"THE COURT: You mean the issuance of the check, itself?
"MR. JONES: The issuance of the check, itself.
"THE COURT: That is a legal question.
"MR. LEWIS: It was due on the contract. He had to issue it.
"THE COURT: I don't think it could be said when he released those funds that he had been informed he wasn't or never would be acquiring a performance

bond and that the bank was going to pay the money elsewhere. I don't think you can say that. You have to have a waiver. He would have to been fully informed of what the bank did.

"Mr. Jones: *I guess you couldn't under his evidence.*

"The Court: *No, and you didn't contradict it once. . . .*" (Emphasis supplied.)

The Bank made no objection to the instructions for failure to cover the question of waiver. In fact the question was not raised again until the consideration of post-trial motions.

Although we see no error in the ruling of the trial court, the issue is not properly before us for review.

A party should not be permitted to assume an attitude in this court inconsistent with that taken in the court below. (*Spaulding v. Dague*, 120 Kan. 510, 243 Pac. 1045.) Errors invited or in which a party acquiesces in the court below cannot be raised on appeal. (*Brown v. Oil Co.*, 114 Kan. 482, 218 Pac. 998; *Oliver Farm Equipment Sales Co. v. Lynch*, 151 Kan. 260, 98 P. 2d 95; *Meyer Sanitary Milk Co. v. Casualty Reciprocal Exchange*, 145 Kan. 501, 66 P. 2d 619.)

We come next to the appeal of Robert Lightner complaining of the judgment rendered against him in favor of the Bank for the face value of the note given by Bontz to the Bank and co-signed by Lightner.

At the outset we are faced with the Bank's motion to dismiss Lightner's appeal for the reason that he had acquiesced in and confirmed the judgment.

The facts on which the issue is raised may be briefly stated.

Lightner defended on the single ground that he signed the note on the representation of the Bank, that the note was secured by the monies to become due Bontz from the construction contract with the Browns.

The trial court entered judgment against Lightner for the face value of the note. Lightner, in his post-trial motions, which included a motion for a new trial, contended that he should have been allowed all or part of the $8,000 paid by the Browns as a credit on the note.

We see no merit in the Bank's contention that the appeal should be dismissed.

There is no inconsistency in Lightner's position. He simply contends that judgment was erroneously rendered against him for the

full amount of the notes but if an erroneous judgment was to stand against him he should at least have the credits which would follow such a judgment.

The law has always recognized the right of a defendant to plead alternative defenses free from any charge of estoppel by admission or acquiescence. We see no reason why a party cannot challenge a judgment on consistent alternative grounds without being charged with estoppel by admission or acquiescence.

Lightner, in his brief on appeal, first contends that the trial court erred in failing to sustain his motion for judgment on the pleadings because of misjoinder of causes of action.

Lightner suggests that the action was originally brought by the Browns against the Bank on the theory of breach of contract. The Bank then moved to make Lightner an additional party defendant and in a cross-petition alleged a cause of action against Lightner upon a promissory note. The question of misjoinder was first raised in Lightner's answer. Specifically the first paragraph of the answer alleged that the amended cross-petition "improperly joins several causes of action, and further that said amended cross-petition fails to state facts sufficient to constitute a cause of action against this answering defendant."

This answer was filed after Lightner had attacked the cross-petition by a motion to make definite and certain and a general demurrer without raising the question of misjoinder.

Further the case was tried to a jury and a careful examination of the record does not disclose that the question of misjoinder was ever presented to and determined by the trial court.

Although we find no misjoinder the issues were formed under the provisions of the old Code of Civil Procedure and a review of the specific question would establish no precedent for future procedure.

This court will not review trial errors which were not presented to and determined by the trial court. (*Karle v. Board of County Commissioners,* 188 Kan. 800, 366 P. 2d 241; *Rexroad v. Kansas Power & Light Co.,* 192 Kan. 343, 388 P. 2d 832; *Green v. Kensinger,* 193 Kan. 33, 392 P. 2d 122.)

Approaching the merits of Lightner's appeal we find him asking the question:

"May a comaker or cosigner of a promissory note rely on a material condition expressed in a collateral instrument executed contemporaneously with or imme-

diately prior to the execution of the note to defeat an action brought by the payee who is a party to the whole transaction and not a holder in due course?"

Lightner also alleges numerous errors on the part of the trial court in taking the case from the jury and directing a verdict against him. His defense was:

". . . That Robert Lightner did co-sign said note specifically relying upon the representation of the Defendant, East Side State Bank that said note was further secured by an assignment of the monies to become due from Val J. Brown under the aforementioned construction contract, which contract was to be covered by a performance bond."

The court found that the defense failed for lack of evidence. The testimony of Lightner reads:

"A. I examined the documents before I signed the note to make sure that all the collateral was there and all the security was there so I wouldn't be exposing myself on the note.

"Mr. Jones: I object to the latter portion of the statement as a conclusion of the witness.

"The Court: Overruled.

"Q. And then did you do anything else, Mr. Lightner?

"A. After I examined the documents and signed the note, I left the bank.

"Q. You signed the note?

"A. Yes.

"Q. And then you left the bank?

"A. Yes.

"Q. At any time while you were in the bank, did you have any conversation with Mr. Arthur Smith?

"A. Yes, I spoke to Arthur Smith. I was introduced to Mr. Arthur Smith by Mr. Bontz when I went in the bank.

"Lightner did not have any conversation with Cornell Smith while he was in the bank. . . .

. . . . . . . . . . . . . .

"Q. Well, that is your signature on the note, is it not, Mr. Lightner?

"A. Yes.

"Q. And you signed that note voluntarily?

"A. I signed it on two conditions; subject to a performance bond and assignment of the funds of the construction contract to the note.

"Q. Did you tell the bank you signed it on those conditions?

"A. It is very apparent I did. It is written in the document.

"Q. *Did you tell any representative of the bank you signed it on those conditions?*

"A. *I don't tell banks how to operate banks.*

"Q. Pardon.

"A. I don't tell banks how to operate banks.

"Q. *As a matter of fact, didn't you testify in your deposition where you said nothing to the bank about there being any conditions?*

"A. *Yes, I just repeated that.*

"At the time Lightner signed the note he was under the impression Bontz was financially sound." (Emphasis supplied.)

Lightner, by his own testimony, made no suggestion to the Bank that he was signing the note subject to conditions. Evidence of conditions and circumstances would not have changed this positive testimony, neither did it leave a question of fact to be submitted to the jury as to whether the signature was conditional.

In *Schmid v. Eslick*, 181 Kan. 997, 317 P. 2d 459, it was held:

". . . Where no evidence is presented, or the evidence presented is undisputed and is such that the minds of candid persons may not draw differing inferences and arrive at opposing conclusions with reason and justice, the matter becomes a question of law for the court's determination." (Syl. 5. See, also, *Schmatjen v. Alexander*, 192 Kan. 807, 391 P. 2d 313.)

An examination of the record discloses no trial errors justifying the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.