No. 46,205

HELEN POWERS, *Appellant*, v. STATE DEPARTMENT OF SOCIAL WELFARE OF KANSAS, *Appellee and Cross-Appellant.*

(493 P. 2d 590)

Opinion filed January 22, 1972.

*Thomas DeCoursey*, of Kansas City, argued the cause, and was on the brief for the appellant.

*Woody D. Smith,* attorney for the State Department of Social Welfare, argued the cause, and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal from a decision of the Wyandotte County Board of Social Welfare denying welfare benefits to the appellant, Helen Powers, under the Aid to the Disabled Program. Welfare benefits were denied because of appellant's refusal to submit to a medical examination as required by the regulations of the State Department of Social Welfare. Appellant is a member of the Wyandotte County Tabernacle Holiness Church and her religious beliefs do not permit her to submit to a medical examination. On September 12, 1969, appellant applied to the Wyandotte County Board of Social Welfare for assistance in the form of Aid to the Disabled. Her application was denied because she refused to take the medical examination required. Applicant then requested a fair hearing before an appeals committee of the State Department of Social Welfare. The reasons stated for the appeal were in substance that nothing in the Social Security Act required her to take a medical examination and, if so, the requirement of a medical examination constituted a violation of her First Amendment right to freedom of religion. Pursuant to K. S. A. 75-3306 and department regulations J. J. B. Wigglesworth was appointed as referee to conduct the hearing. Mr. Wigglesworth was a member of the legal staff of the State Department of Social Welfare. On December 10, 1969, a hearing was held in Wyandotte County on the appeal with Wigglesworth serving as referee. At this hearing there was non-medical testimony presented to the effect that Mrs. Powers had physical disabilities consisting of deafness, limited capacity to use her hands, failing eye sight, arthritis in her back, and varicose veins. To substantiate her physical condition appellant offered only the testimony of herself and her two sons, Joe and Jordan, and that of her minister, Rev. Henry Utter, of the Wyandotte County Holiness Church. In addition Mrs. Mary L. Burton, the caseworker assigned to appellant's case, testified that Mrs. Powers was ineligible for Aid to the Disabled because she refused to take the medical examination required by the regulations of the State Department of Social Welfare. Mrs. Burton testified that to her knowledge the only reason Mrs. Powers did not submit to the medical examination was because of her religious beliefs. There was no medical testimony presented since Mrs. Powers had re-

fused to submit to a medical examination. On January 22, 1970, the referee, Wigglesworth, made his recommendation to the appeals committee. He recommended that the appeals committee make a finding that there was insufficient evidence to conclude that either the applicant was disabled or that she was not disabled. He pointed out in his recommendation that without a medical examination he could not determine the extent of appellant's health problems or whether singularly or together they would constitute disability as defined in the regulations of the State Department of Social Welfare and applicable statutes. On January 27, 1970, by a memorandum decision the State Appeals Committee affirmed the decision of the Wyandotte County Board of Social Welfare denying Aid to the Disabled benefits to the applicant. The basis of its decision was the failure of appellant to submit to a medical examination as required by the regulations of the State Department. On February 3, 1970, appellant appealed the decision of the Appeals Committee to the District Court of Wyandotte County pursuant to K. S. A. 60-2101. On February 9, 1970, the appellee State Department moved to dismiss the appeal claiming that the Wyandotte County District Court did not have jurisdiction over the matter. The basis for the motion was that the order appealed from was an administrative order rather than a judicial or a quasi-judicial order and therefore an appeal could not be taken under K. S. A. 60-2101. The question of the venue of the appeal was not presented in this motion. On February 18, 1970, the appellant moved to have J. J. B. Wigglesworth disqualified as attorney representing the State Department of Social Welfare in the district court on the grounds that he had previously acted as referee during the fair hearing. On March 10, 1970, the district court overruled the motion to dismiss holding that under K. S. A. 60-2101 the appellant had the right to appeal to the district court. The motion of appellant to disqualify Mr. Wigglesworth as attorney for the State Department was denied and he continued to represent the State Department of Social Welfare in all further proceedings in district court.

On March 12, 1970, the appellee State Board filed an answer in which among other defenses it contended that the venue of the appeal was improper for the reason that K. S. A. 60-2101 (a) requires a hearing in "the county in which such judgment or order was entered" and that county is Shawnee County rather than

Wyandotte County, Kansas. On May 6, 1970, a hearing was held before the District Court of Wyandotte County at which time appellee orally moved to dismiss the case on the ground of improper venue. This motion was overruled. The appeal was then presented to the court on the record and the appeal was taken under advisement. On June 3, 1970, the district court entered judgment affirming the ruling of the Appeals Committee of the State Department of Social Welfare and denied relief to the appellant. Appellant filed a motion for a new trial which was overruled. A timely appeal was then taken to this court. The State Department of Social Welfare also filed a cross-appeal raising the jurisdictional questions previously presented to the trial court and overruled.

Since the cross-appeal filed by the State Department of Social Welfare raises jurisdictional issues it is appropriate to consider those points first. The points raised by the appellee and cross-appellant are as follows:

(1) The district court erred by finding that the appeals committee of the State Board of Social Welfare exercises judicial or quasi-judicial functions within the meaning of K. S. A. 60-2101 (a) holding thereby that the district court has jurisdiction for an appeal from the appeals committee.

(2) The court erred in finding that the venue for such an appeal was in Wyandotte County rather than in Shawnee County.

K. S. A. 60-2101 (a) provides that a judgment rendered or final order made by a court or any other tribunal, board or officer exercising judicial or quasi-judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court. The issue to be determined under this point is whether or not the State Appeals Committee of the State Department of Social Welfare in denying welfare benefits is exercising judicial or quasi-judicial functions. If so, an appeal may be taken to the district court; if not, the district court has no jurisdiction under K. S. A. 60-2101 (a) to take an appeal from that tribunal. The test to be applied in determining whether an administrative agency performs a judicial or quasi-judicial function is set forth in *Gawith v. Gage's Plumbing & Heating Co., Inc.*, 206 Kan. 169, 476 P. 2d 966. In the Gawith case it is stated that a judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist, whereas legislation looks to the future and changes existing conditions by making a new rule to be applied thereafter. It is clear that in the present case the order of the State Appeals Committee

denying Aid to Disabled benefits was quasi-judicial within the meaning of K. S. A. 60-2101 (*a*). The State Appeals Committee is required by K. S. A. 75-3306 and by the regulations of the State Department of Social Welfare, K. A. R. 30-7-17 and K. A. R. 30-7-19, to receive and weigh evidence, to apply existing statutes and regulations and to make a determination of the applicant's right to receive welfare benefits. In the instant case the State Appeals Committee further determined that the appellant's rights, both statutory and constitutional, had not been violated by the requirement that she submit to a medical examination since the State Appeals Committee rejected appellant's contentions by denying her disability benefits. These actions taken by the State Appeals Committee in affording a fair hearing to an applicant for welfare benefits clearly constitute the exercise of judicial or quasi-judicial functions within the meaning of K. S. A. 60-2101 (*a*). Hence the decision of the district court holding that it had jurisdiction to take this appeal from the Appeals Committee pursuant to K. S. A. 60-2101 (*a*) was entirely correct.

The trial court did not err in finding that the venue for the appeal was in Wyandotte County rather than Shawnee County. In the first place K. S. A. 60-610 provides that objection to the venue of an action shall not be allowed except on timely motion made and for grounds established before trial of the action is commenced on the merits. In this case the appellee, State Board, filed its answer setting forth the defense that the venue of the appeal was improper for the reason that any appeal should have been brought in Shawnee County rather than Wyandotte County. K. S. A. 60-212 (*b*) provides in substance that every defense in law or fact to a claim for relief in any pleading shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

"(1) Lack of jurisdiction over the subject matter;
"(2) lack of jurisdiction over the person;
"(3) improper venue;  . . ."

It is further provided in K. S. A. 60-212 (*b*) that a motion making any of these defenses shall be made before pleading if a further pleading is permitted. On the face of it it would appear that there is a conflict between the provisions of K. S. A. 60-212 (*b*) which permits *every* defense to be included in an answer and the provisions of K. S. A. 60-610 which states clearly that objection to the venue shall not be allowed *except on timely motion* made and for grounds

established before trial on the action is commenced on the merits. In order to reconcile these statutory provisions it would seem reasonable to construe them to permit a party to set up the defense of improper venue in his answer or other responsive pleading but also to require him to file a timely motion and to establish his grounds therefore before the commencement of the trial on the merits. The rule of statutory construction is that a specific provision controls over a general provision incidentally covering the same subject matter. (*Harris v. Shanahan*, 192 Kan. 629, 390 P. 2d 772.) In this case the appellee State Department of Social Welfare set up the defense of improper venue in its answer but failed to present a timely motion to the district court before the case came on to be heard on the merits. Here the objection to the venue should not be allowed since appellee failed to comply with the provisions of K. S. A. 60-610. However in any event the trial court ruled properly in holding that the venue of this case was in Wyandotte County and not Shawnee County.

It should be noted that K. S. A. 60-2101 (*a*) provides in substance that an appeal brought thereunder is perfected by filing a notice of appeal with the administrative tribunal and then causing copies of the proceedings to be "filed with the clerk of the district court *of the county in which such judgment or order was entered.*" [Emphasis supplied.]

Here Wyandotte County was the proper venue for the appeal from the decision of the State Appeals Committee since Wyandotte County was the county in which the judgment or order appealed from was entered. Under the regulations of the State Department of Social Welfare the county board is required to maintain one or more intake offices where applications for welfare assistance may be made, (K. A. R. 30-3-1 and K. A. R. 30-3-3). It is the responsibility of the county board of social welfare to receive such applications for assistance, to investigate them, and to determine eligibility or ineligibility of the applicant within 30 days of the application date. (K. A. R. 30-3-5.) The county board makes the initial decision either approving or denying welfare benefits. (K. A. R. 30-3-17.) The county board is required by statute to keep records on applications for public assistance (K. S. A. 39-713 [*d*]) and to maintain files containing information about each individual case (K. S. A. 39-713 [*g*]). K. S. A. 75-3306 provides that an applicant who has been denied welfare benefits has an absolute right

to appeal to an appeals committee designated by the State Board of Social Welfare. The State Department of Social Welfare has adopted K. A. R. 30-7-14 requiring that all state hearings shall be held in the county in which the appellant resides unless other special arrangements are necessary. The regulations of the State Department do not declare where the Appeals Committee shall meet or arrive at is decision. It should also be noted that after making its decision the Appeals Committee is required to prepare a written opinion stating its decision and the facts, rules, law, and reasons upon which it is based. Copies of the decision must be delivered to the appellant and to the county board. The county department must act upon the decision and recommendation of the Appeals Committee within 30 days after the decision has been rendered. Until the decision of the Appeals Committee has been received and filed with the county welfare department there could be no "entry of judgment" within the meaning of K. S. A. 60-2101. K. S. A. 60-258 (b) provides that if the form of the judgment is to be settled by a journal entry or other document it should be filed with the clerk and such filing should constitute the "entry of judgment" and it shall not be effective before such filing. It is, of course, important to determine when judgment has been entered since an appeal must be taken from an administrative agency exercising quasi-judicial functions within 30 days *of its entry.* Under the statutes cited and the regulations of the State Department of Social Welfare it seems clear that there can be no "entry of judgment" until the decision of the Appeals Committee has been filed with the county welfare department. Hence the venue for this appeal is properly in Wyandotte County where appellant resides, where the application for welfare benefits was originally filed and denied by the Wyandotte County Welfare Department, where the hearing on appeal was held and where the State Appeals Committee was required to file its decision. It follows that the district court was correct in this case in holding that the venue for this appeal was in Wyandotte County rather than in Shawnee County, Kansas.

It having been determined that the district court had jurisdiction to act in this case we can now turn to the contentions of appellant on this appeal. The appeal relies upon four points:

(1) The Social Security Act, 42 U. S. C., Chapter 7, exempts an applicant for Aid to the Disabled benefits from taking a medical examination when the applicant objects thereto for religious reasons.

(2) The trial court erred in its interpretation of the First Amendment to the Constitution of the United States which prevents any state from making any law affecting the free exercise of religion.

(3) The trial court erred in its interpretation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States in that the decision has the effect of discriminating between applicants for various types of public assistance on solely religious grounds.

(4) The trial court erred in overruling the appellant's Motion to Disqualify the Attorney of Record for the Defendant because such action denied appellant due process as required by the Fourteenth Amendment.

Appellant's first point requires an interpretation of certain sections of 42 U. S. C., Chapter 7. Chapter 7 is divided into 19 subchapters which cover the various federal welfare programs. Included within Chapter 7 are two sections which specifically exempt an applicant for certain designated welfare benefits from taking a medical examination when the applicant objects thereto for religious reasons. The two sections are 42 U. S. C. § 1396f and 42 U. S. C. § 715 which are nearly identical in phraseology and which provide as follows:

"Nothing in this subchapter shall be construed to require any State which has a plan approved under this subchapter to compel any person to undergo any medical screening, examination, diagnosis, or treatment or to accept any other health care or services provided under such plan for any purpose (other than for the purpose of discovering and preventing the spread of infection or contagious disease or for the purpose of protecting environmental health), if such person objects (or, in case such person is a child, his parent or guardian objects) thereto on religious grounds."

Both of these sections were added to the Social Security Act in January 1968. Section 715 is included in Subchapter V which is concerned with only Maternal and Child Care Health and Crippled Children Services. Section 1396f is found in Subchapter XIX which is concerned exclusively with Grants to States for Medical Assistance Programs. There are no other subchapters in Chapter 7 of 42 U. S. C. which exempt applicants from taking a medical examination where they object thereto on religious grounds. In this case the appellant made application for welfare benefits under Subchapter XIV which is concerned exclusively with Grants to States for Aid to the Disabled. It should be noted that the wording of 42 U. S. C. § 1396f and 42 U. S. C. § 715 specifically restricts their application to the subchapter in which each is placed. If Congress had intended these provisions to apply to all of the programs included under Chapter 7 it would have been a simple matter to include in Chapter 7 a general provision exempting all applicants

for welfare benefits of any type from undergoing medical examinations where objection was made on religious grounds. Congress could also have placed a similar exemption in Subchapter XIV if it had intended the exemption to apply to applicants for Aid to the Disabled benefits. This the Congress failed to do. We have concluded that appellant's first point is without merit and that an applicant for Aid to the Disabled benefits under Subchapter XIV of the Social Security Act, 42 U. S. C., Chapter 7, is not by statute exempted from taking a medical examination when the applicant objects thereto for religious reasons.

The appellant as her second point contends in substance that the requirement of a medical examination as a condition of eligibility for receiving Aid to the Disabled benefits violates the appellant's freedom of religion as guaranteed by the First Amendment to the Constitution of the United States and as applied to the State of Kansas through the due process clause of the Fourteenth Amendment. It is clear from the record in this case that the appellant's refusal to submit to a medical examination was based upon her religious beliefs as a member of the Wyandotte County Tabernacle Holiness Church. Under the provisions of K. S. A. 1971 Supp. 39-708 and K. S. A. 75-3304 the State Board of Social Welfare is granted the power to determine the general policies relating to all forms of social welfare and to make appropriate rules and regulations pertaining thereto. Pursuant to this statutory authority the State Board has adopted rules and regulations setting forth requirements of eligibility for welfare assistance under the various welfare programs. As applied to the Aid to the Disabled program, the State Board has adopted regulations which in substance provide that in order for an applicant to be eligible for Aid to the Disabled benefits the applicant must be found to be permanently and totally disabled by the State Appeals Committee on the basis of medical and social findings submitted by the county welfare department. This requirement of eligibility is set forth in Kansas Public Assistance Manual, Section 1123.121. The stated purpose of requiring the medical examination is so that medical evidence may be available to determine whether or not the applicant has a permanent and total disability which would make the applicant eligible for Aid to the Disabled benefits. In the Kansas Public Assistance Manual, Section 1123.12, a requirement is made that medical evidence must show that a physical, mental or emotional

impairment of major importance exists; that the impairing condition is one that is not likely to improve because the condition is not apt to respond to any known therapeutic procedures or because treatment that might lead to improvement is unavailable and unadvisable; the etiology of the impairing condition if it can be determined; and the extent to which the impairment curtails normal activity such as mobility, walking, lifting, use of senses, ability to learn, ability to act purposely, etc.

One of the precepts of Mrs. Power's religion is that faith in God will cure an impairment of any physical disability. Starting with this statement as a premise appellant argues that to compel her to undergo a medical examination as a condition to receiving Aid to the Disabled benefits constitutes a violation of her First Amendment guarantee of freedom of religion. We, of course, accept the principle that every individual has a right to worship according to the dictates of his own conscience. The Fourteenth Amendment safeguards religious liberty from state interference. The cases, however, make a distinction between religious beliefs and religious practices. Freedom to believe is absolute but freedom to act is not absolute but limited and qualified. (*State v. Garber*, 197 Kan. 567, 419 P. 2d 896, cert. den. 389 U. S. 51, 19 L. Ed. 2d 50, 88 S. Ct. 236.) A State acting through the police power may reasonably limit the free exercise of religion for the protection of society. Where the exercise of legislative power comes into conflict with the freedom of religion, the validity of legislation will depend upon the balance of the factors affecting the public interest. The individual cannot be permitted on religious grounds to be the sole judge of his duty to obey laws enacted in the public interest. (*State v. Garber*, supra.) Each case involving an alleged invasion of the constitutional right of freedom of religion must be determined on its individual facts. Stated in another way a state in providing services for its people may provide them on a condition which is contrary to the religious scruples of some; but the condition imposed must be reasonable and must be justified by some compelling state interest. (*Sherbert v. Verner*, 374 U. S. 398, 10 L. Ed. 2d 965, 83 S. Ct. 1790.)

The real issue presented under this point is whether the regulation of the State Board of Social Welfare requiring a medical examination as a condition for receiving welfare disability benefits is reasonable and is justified by some compelling state interest. In

this case we are, of course, faced with the problem of accommo-
dating between the rights of the state acting through the police
power and the right of the appellant to her religious freedom as
guaranteed by the constitution.

There is no contention presented here that the State Department
of Social Welfare does not have the power to establish rules and
regulations to govern eligibility for Aid to the Disabled and to
prescribe appropriate procedures for eligibility to be determined.
The requirement of a medical examination for applicants seeking
Aid to the Disabled is in substance simply a procedural rule of
evidence which prescribes a method of proof to establish a deter-
mination of fact in a quasi-judicial hearing. The issue of fact to
be determined is whether or not the applicant is permanently and
totally disabled within the meaning of the applicable statutes. The
important state interest which is involved in this situation is de-
scribed clearly and unequivocally by Justice Blackmun in *Wyman
v. James*, 400 U. S. 309, 27 L. Ed. 2d 408, 91 S. Ct. 381:

"The agency, with tax funds provided from federal as well as from state
sources, is fulfilling a public trust. The State, working through its qualified
welfare agency, has appropriate and paramount interest and concern in
seeing and assuring that the intended and proper objects of that tax-produced
assistance are the ones who benefit from the aid it dispenses. Surely it is not
unreasonable, in the Fourth Amendment sense or in any other sense of that
term, that the State have at its command a gentle means, of limited extent and
of practical and considerate application, of achieving that assurance.

"One who dispenses purely private charity naturally has an interest in and
expects to know how his charitable funds are utilized and put to work. The
public, when it is the provider, rightly expects the same. It might well expect
more, because of the trust aspect of public funds, and the recipient, as well
as the caseworker, has not only an interest but an obligation." (pp. 318, 319.)

In *Wyman v. James*, supra, the Supreme Court of the United
States held that the right to gain entry to and inspect a home of an
applicant for welfare assistance is a reasonable requirement and
does not violate Fourth Amendment rights under the United States
Constitution.

The cases today generally recognize that where there is an adver-
sary proceeding involving the physical or mental condition of a
claimant a requirement of a medical examination as a basis for proof
of disability does not offend constitutional liberties. For example
Rule 35 of the Federal Rule of Procedure grants to the Federal
Courts the power to order a party to submit to a physical or mental
examination by a physician in any action in which the mental or

physical condition of a party is in controversy. K. S. A. 60-235 gives similar powers to the trial courts of Kansas. Such statutory provisions are quite common throughout the United States. The constitutional validity of such procedural rules has been attacked at various times since these rules have been adopted. They are generally upheld on the theory that the invasion of the person involved in a physical examination is outweighed by the need for such examinations in the interest of truth and justice. The United States Supreme Court has held Rule 35 constitutional and not in violation of any substantive constitutional right. (*Sibbach v. Wilson & Co.*, 312 U. S. 1, 61 S. Ct. 422, 85 L. Ed. 479; *Schlagenhauf v. Holder*, 379 U. S. 104, 85 S. Ct. 234, 13 L. Ed. 2d 152.)

Statutory provisions requiring a medical examination for persons claiming physical or mental disabilities are likewise quite common throughout the United States in the area of workmen's compensation. In Kansas K. S. A. 1971 Supp. 44-515 requires a claimant for workmen's compensation to submit to a medical examination. If the injured employee refuses to submit to a medical examination, then his right to workmen's compensation is suspended until he does so. (K. S. A. 44-518.) Likewise provisions in various types of insurance policies which require a medical examination in order for insurance benefits to be collected have been consistently upheld in the face of constitutional objections. See for example the annotation in 5 A. L. R. 3d 929, where many cases are cited. When we consider all of these cases it would seem to follow by analogy that a medical examination may be reasonably required of an applicant for welfare disability benefits as a condition precedent for him to become eligible for such benefits. Under the rules and regulations of the State Department of Social Welfare the applicant for Aid to the Disabled benefits is entitled to a medical examination by a doctor of his choice if he so desires. Another factor important to note is that an applicant for Aid to the Disabled benefits cannot be *compelled* to submit to a medical examination. Here the choice is entirely the appellant's; she is fully within her rights to refuse to undergo a medical examination but in asserting this right she will be denied welfare benefits. We hold that the requirement of a medical examination as a condition of eligibility for receiving Aid to the Disabled benefits does not violate appellant's freedom of religion.

Appellant's third point is that the requirement of a medical

examination for an applicant for Aid to the Disabled benefits under Title XIV and the exemption from a similar medical examination for applicants for medical care under Title XIX and applicants for Maternal or Child Health or Crippled Children's Services under Title V constitutes a violation of the equal protection clause under the Fourteenth Amendment to the United States Constitution. The contention here of course, is that this constitutes an invidious discrimination as between applicants for different types of welfare benefits. It is, of course, within the police power of the state to establish classifications when a real, logical and substantial basis exists for the classification. (*Pinkerton v. Schwiethale,* 208 Kan. 596, 493 P. 2d 200.

The equal protection of the law clause does not restrain the normal exercise of governmental power but only abuse in the exertion of such authority. That clause is not offended against simply because as the result of the exercise of the power to classify some inequality may be occasioned. (*Martin v. Davis,* 187 Kan. 473, 357 P. 2d 782, appeal dism. 368 U. S. 25, 7 L. Ed. 2d 5, 82 S. Ct. 1, reh. den. 368 U. S. 945, 7 L. Ed. 2d 341, 82 S. Ct 376; *Louisville & Nashville R. R. v. Melton,* 218 U. S. 36, 54 L. Ed. 921, 30 S. Ct. 676.) The issue to be determined here is whether or not there is a reasonable basis for applying different rules of eligibility to applicants for different types of welfare benefits. We have no hesitancy in holding that the Medical Assistance program under Title XIX and the Maternal and Child Health program under Title V are sufficiently different in nature and scope from the Aid to the Disabled program under Chapter XIV to justify different requirements of eligibility and different procedures to establish the same. In the first place the medical assistance and child and health programs are not concerned with disability or inability to engage in gainful employment. They are concerned solely with medical treatment and maternal and child health. Benefits under these programs are obtainable even though an applicant is not permanently and totally disabled and even though an applicant may be able to derive some income from his own endeavors. On the other hand the Aid to the Disabled program is concerned exclusively with the applicant's permanent and total disability, both at the time the original application is made and at subsequent points in time when the state of his physical and mental health is required to be periodically reviewed. It is clear that the ultimate purpose and scope of each program

sufficiently differs from the others to justify different eligibility requirements and procedures to establish the same. We therefore conclude that the appellant has not been denied equal protection of the law under the Fourteenth Amendment to the Constitution of the United States.

In her fourth point the appellant contends that the district court erred in refusing to disqualify J. J. B. Wigglesworth as attorney for the State Department of Social Welfare in all proceedings in the district court. Appellant's position is that she has been denied due process of law under the Fourteenth Amendment to the Constitution of the United States because Mr. Wigglesworth served as the referee at the fair hearing before the State Appeals Committee and he therefore should have been disqualified as attorney for the appellee in the proceedings before the district court. The appellant takes the position that a referee is a quasi-judicial officer who is appointed to exercise judicial powers by taking testimony, hearing evidence, and reporting his findings. It is further contended that the administrative hearing is quasi-judicial in nature and that the constitutional guaranty of due process of law applies to such proceedings. (*Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System,* 205 Kan. 780, 473 P. 2d 72.) One essential element of due process of law is that the hearing officer or referee be impartial. (*Long Beach Fed. S. & L. Ass'n v. Federal Home Loan Bk. Bd.,* 189 F. Supp. 589.) Appellant points out that under the Canon 36 of the Canons of Professional Ethics a lawyer should not accept employment as an advocate in any matter upon the merits which he has previously acted in a judicial capacity. A similar provision is contained in the Code of Professional Responsibility adopted by this court on February 11, 1970, effective July 1, 1970. The specific provision applicable is Canon 9, DR 9-101(A) (205 Kan. xci).

It is undisputed here that Mr. Wigglesworth served as referee at the "fair hearing" conducted on December 10, 1970. At that time he heard the testimony of the witnesses and made recommendations to the Appeals Committee. His specific recommendation was as follows: "There is insufficient evidence to conclude either that appellant is disabled or that she is not disabled". This exact recommendation was adopted by the State Appeals Committee by its memorandum decision dated January 27, 1970. Subsequently Mr. Wigglesworth served as attorney for the State Department of Social · Welfare in the proceedings before the

District Court of Wyandotte County, Kansas. We have no hesitancy whatsoever in holding that it was highly improper for the State Department of Social Welfare to assign Mr. Wigglesworth to serve in the capacity of its attorney after he had previously served in the same matter as referee. Under the regulations of the State Department of Social Welfare the referee is selected by the State Board to conduct its hearings. (K. A. R. 30-1-1 (145).) The regulations invest in the referee a number of powers which are clearly judicial in nature. A referee has the right to approve persons who may attend the hearing and issue subpoenas. (K. A. R. 30-7-16.) Under K. A. R. 30-7-17 the referee is required to advise the parties of the procedure to be followed, to make a preliminary statement of the issues, to receive evidence reasonably related to the issues involved, to establish the competence of witnesses, to adjourn the hearing, and to conclude the hearing when he is satisfied that all pertinent information bearing upon the appeal has been introduced and examined. The referee also is required to make recommendations to the State Appeals Committee. These powers are, for all practical purposes, the same as those granted masters under K. S. A. 60-253. These powers are those customarily performed by judicial officers and it cannot be seriously maintained that Mr. Wigglesworth, as the referee who conducted the fair hearing, was not a judicial officer and acting as such. Were there issues of fact involved on this appeal grave issues of due process of law may well have justified a reversal of this case and a new trial. Mr. Wigglesworth clearly should have been disqualified to serve as attorney for the appellee in the district court. His appearance as an advocate was clearly in conflict with his former quasi-judicial position. The issues presented in this case, however, are pure issues of law and not issues of fact. It is undisputed in the record that Mrs. Powers refused to undergo a medical examination in accordance with the regulations of the State Board of Social Welfare. The validity of such a regulation is strictly a question of law. Hence the impropriety of Mr. Wigglesworth's serving both as a referee and as an advocate should not affect our decision in this case. We emphasize however that the State Board of Social Welfare was clearly guilty of an impropriety in assigning Mr. Wigglesworth to represent it in a case in district court in which he had previously served as referee. (*O'Carroll v. Civil Aeronautics Board,* 144 F. 2d 993.) The

court wishes to make it clear that it is not questioning the integrity or the fairness of Mr. Wigglesworth or the manner in which he handled the hearing provided to appellant by the appellee. We only wish to emphasize that decisions of an Appeals Committee of the State Department of Social Welfare should not be tainted by the appearance of partiality. Procedures should be established by the State Department to protect the creditability of the fair hearings provided applicants for welfare in this state. We wish to make it clear that in the future a procedure which permits a referee or quasi-judicial officer to represent a party in subsequent proceedings in the same case will not be sanctioned by this court.

For the reasons set forth above we find no reversible error in the record. The issues to be determined below were exclusively questions of law and we find that they were properly determined by the learned trial judge. It follows that the judgment is affirmed.

IT IS SO ORDERED.