No. 46,487

Lorene Thompson, *Appellee—Cross-Appellant*, v. George C. Amis, Henry J. Riojas, Theodore K. Sharp, as members of the Civil Service Board of Kansas; and George C. Amis, Henry J. Riojas, and Theodore K. Sharp, individually; and Walter F. Kuiken, Secretary of the Civil Service Board of Kansas; and Walter F. Kuiken, individually; and the Department of Administration of the State of Kansas; and the State Board of Social Welfare of the State of Kansas *Appellants—Cross-Appellees*.

(493 P. 2d 1259)

Opinion filed January 22, 1972.

*Franklin R. Theis,* assistant attorney general, argued the cause, and *Woody D. Smith,* attorney for the Department of Social Welfare, and *Vern Miller,* attorney general, were with him on the brief for appellants—cross-appellees.

*Mary Schowengerdt,* of Irwin, Irwin & Schowengerdt, of Topeka, argued the cause, and *Robert R. Irwin,* of the same firm, was with her on the brief for appellee—cross-appellant.

The opinion of the court was delivered by

FATZER, C. J.: This appeal stems from a controversy over the discharge of a classified civil service employee.

The question immediately before the court is one of procedure involving jurisdiction. The facts material to the disposition of that question are first presented.

On August 1, 1968, the plaintiff, Lorene Thompson, was promoted to the position of Supervisor of Vocationl Rehabilitation for the Topeka State Hospital, and as of November 30, 1968, she was granted permanent status. On February 17, 1969, she was orally dismissed from her position by the Acting Director of the Division of Vocational Rehabilitation of the State of Kansas. The first written notice of her oral dismissal was given by letter dated February 19, 1969.

The plaintiff gave notice of her intention to appeal her dismissal by a letter dated February 20, 1969, directed to the Chairman of the Civil Service Board of the State of Kansas (the board), requesting a hearing with respect to the dismissal. The board, on March 27, 1969, and again on April 3, 1969, conducted a hearing in the matter. On April 3, 1969, the Board announced its decision which was made a part of its minutes, and reads:

" 'The hearing for E. Lorene Thompson, Vocational Rehabilitation Supervisor, Department of Social Welfare, was resumed at 10:30 a. m. At the conclusion of the hearing, it was the decision of the Board that the action of the appointing authority in dismissing Miss Thompson be sustained. The Personnel Director was directed to place the name of Miss Thompson on the eligible register for Vocational Rehabilitation Counselor for a period of one year.' "

The secretary of the Board directed a letter to the plaintiff reporting its decision. Thereafter, and on April 3, 1970, the plaintiff delivered a letter to the Director of the personnel division requesting that her term of eligibility be extended for a period of one year pursuant to K. S. A. 75-2942 (2). She also filed a motion for rehearing and reconsideration. The Board's decision on that motion was reported in its minutes of May 11, 1970, and reads:

" 'The board reviewed the request for re-hearing for Lorene Thompson requested by Mary Schowengerdt, attorney for Miss Thompson. It was the decision of the Board that it *does not have jurisdiction over the matter.*' "

Plaintiff's counsel was informed of the Board's decision by letter

dated May 12, 1970. On May 21, 1970, the plaintiff filed two cases in the district court seeking relief from the decisions of the Board —one was a direct appeal; the other was an action in equity.

On June 3, 1970, the Board filed a motion to dismiss the action in equity on the ground it was immune from actions except on its contracts, and that plaintiff's petition failed to allege the purported cause of action was based on contract. The board also filed a motion to dismiss the appeal for the reason the functions of the board were administrative, not judicial in character, and, therefore, not subject to review under K. S. A. 60-2101 (a).

On June 24, 1970, the plaintiff filed a motion for determination of the appropriate remedy—direct appeal, or action in equity.

At the hearing on the motion for the determination of the proper remedy, counsel for all parties agreed that the remedy was an action in equity for relief in the form of mandamus, and that the appeal statute (K. S. A. 60-2101[a]) had no application. The court then ruled:

"All right. The motion of the plaintiff for a determination of an appropriate remedy then is sustained and it is determined that the proper method of attacking the legality or the propriety or correctness of a decision of the State Civil Service Board is through an independent action in equity which in this case has been brought in Case No. 113,185. But the court is not at this time determining the correctness of the remedy or the appropriateness of the facts alleged in the petition but only the fact that the Court does have jurisdiction in that case to consider the matters of dispute between the plaintiff and the State Board of Social Welfare. Now, do you have anything else to present on your motion in Case No. 113,185?"

Thereafter, the plaintiff filed a motion for judgment on the pleadings in the equity case. The motion was sustained, the court finding that plaintiff was entitled to be restored to her position as Vocational Rehabilitation Supervisor with the State Department of Social Welfare, and that she should be reimbursed for the salary which she had lost because of her wrongful dismissal.

Following a motion for rehearing and a motion by plaintiff for attorney fees, an order of summary judgment was entered on June 30, 1971, placing in the judgment the findings above mentioned, but denying plaintiff attorney fees.

The Board, the Department of Administration, and the Board of Social Welfare, all statutory agencies of the state of Kansas, appealed from the order reinstating the plaintiff to her position of Vocational Rehabilitation Supervisor and reimbursing her for lost

salary. The plaintiff cross-appealed from the order denying her attorney fees.

The appellants contend that an appeal pursuant to K. S. A. 60-2101 (a) from the Board's decision of April 3, 1969, was the only procedural remedy available to the appellee.

Before considering this question, we are met with the appellee's contention the appellants took no appeal from the court's order adjudging that the appellee's remedy was by an equitable action and not by appeal under K. S. A. 60-2101 (a), but actually encouraged the district court to make such an order and they are now foreclosed from raising such an issue.

Ordinarily, trial errors in which a party acquiesces or encourages the district court to make cannot be raised on appeal. A party should not be permitted to assume an attitude in this court inconsistent with that taken in the court below. (*Brown v. East Side National Bank*, 196 Kan. 372, 376, 411 P. 2d 605; *Potwin State Bank v. Ward*, 183 Kan. 475, 327 P. 2d 1091, 80 A. L. R. 2d 166.) However, the rule above stated does not apply where the question is one of jurisdiction of the subject matter. If the district court had no jurisdiction, then this court has no jurisdiction. In *Kowing v. Douglas County Kaw Drainage Dist.*, 167 Kan. 387, 207 P. 2d 457, we held:

"Where the district court had no jurisdiction of the subject matter of an appeal to it, this court does not acquire such jurisdiction by an appeal from a ruling of the district court." (Syl. ¶ 2.)

This court will raise the jurisdictional question on its own motion. (*Materi v. Spurrier*, 192 Kan. 291, 387 P. 2d 221; *Bammes v. Viking Manufacturing Co.*, 192 Kan. 616, 389 P. 2d 828; *Hotchkiss v. White*, 191 Kan. 534, 538, 382 P. 2d 325; *Lira v. Billings*, 196 Kan. 726, 414 P. 2d 13.)

The appellants argue the issue before us is one of jurisdiction. We agree. The district courts are expressly created by the Constitution of the state of Kansas and are given only such jurisdiction as may be provided by the Legislature. (Art. 3, § 6; *State v. Jack*, 69 Kan. 387, 392, 76 Pac. 911, affirmed 199 U. S. 372, 50 L. Ed. 234, 26 S. Ct. 73; *City of McPherson v. State Corporation Commission*, 174 Kan. 407, 411, 257 P. 2d 123.) If the district court had no appellate jurisdiction over the decision of the Board, then it had equitable jurisdiction to determine whether the Board's acts were illegal, fraudulent, or oppressive. (*Gray v. Jenkins*, 183 Kan. 251, 326 P. 2d

319.) If the district court had appellate jurisdiction, then it had no jurisdiction in an independent equitable action to review alleged errors of the Board. (*Pelican Transfer & Storage v. Kansas Corporation Commission,* 195 Kan. 76, 402 P. 2d 762; *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System,* 205 Kan. 780, 473 P. 2d 72; *Neagle v. Brooks,* 203 Kan. 323, 454 P. 2d 544.) See, also, *Northern Natural Gas Company v. Dwyer,* 208 Kan. 337, 492 P. 2d 147, and *Powers v. State Department of Social Welfare* 208 Kan. 605, 493 P. 2d 590.

The appellee relies heavily on *Gray,* supra, where we said that the Board acts quasi-judicially, but that no statutory provision for appeal to the courts is made from an order of the State Civil Service Board, either under the Civil Service statutes, or under the code of civil procedure. The *Gray* case was decided in 1958. Following the decision in that case, the Legislature enacted the new code of civil procedure effective January 1, 1964, which specifically provided for appeals from Administrative Boards exercising quasi-judicial functions. (K. S. A. 60-2101 [*a*].) Insofar as here pertinent, that statute reads:

"A judgment rendered or final order made by a court or any other tribunal, board or officer exercising judicial or quasi-judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court. If no other means for perfecting such an appeal is provided by law, it shall be sufficient for an aggrieved party to file a notice that he is appealing from such judgment or order with such court, tribunal, board, or officer within thirty (30) days of its entry, and then causing true copies of all pertinent proceedings before such court, tribunal, board or officer to be prepared and filed with the clerk of the district court of the county in which such judgment or order was entered. The clerk shall thereupon docket the same as an action in the district court, which court shall then proceed to review the same, either with or without additional pleadings and evidence, and enter such order or judgment as justice shall require . . ."

It is noted the statute as written includes boards or officers exercising quasi-judicial functions.

In *Gawith v. Gage's Plumbing & Heating Co., Inc.,* 206 Kan. 169, 476 P. 2d 966, certain rules were laid down for determining whether an administrative agency performs legislative or judicial functions. We held:

"There is a distinction between the types of decisions rendered by different administrative agencies; and some such agencies perform judicial or quasi-judicial functions while others do not.

"In determining whether an administrative agency performs legislative or

judicial functions, the courts rely on certain tests; one being whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative body must make, and another being whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body.

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist, whereas legislation looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.

"In applying tests to distinguish legislative from judicial powers, courts have recognized that it is the nature of the act performed, rather than the name of the officer or agency which performs it, that determines its character as judicial or otherwise." (Syl. ¶¶ 1, 2, 3, 4.)

It may be added that quasi-judicial is a term applied to administrative boards or officers empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of judicial nature.

The Board is empowered by statute to hear appeals of dismissed employees and determine the reasonableness of the dismissal (K. S. A. 75-2949 [2]), and after considering the evidence, it may order reinstatement of the employee and the payment of loss of salary. (K. S. A. 75-2949 [3] [4].) The Board has authority to establish rules (75-2949 [5]); to conduct hearings; to administer oaths and take testimony; to issue subpoenas to compel attendance of witnesses; to take depositions, and to require the production of documents pertinent to any inquiry or investigation authorized by the Civil Service Act (75-2932 [1-4]).

Giving consideration to the various provisions of the Civil Service Act and the plenary power lodged in the Board by the Legislature, we conclude it exercises quasi-judicial functions in the performance of its duties. That being the case, the procedure for appellate review in the district court provided in K. S. A. 60-2101 (a) was exclusive, and the appellee was required to invoke that procedure within thirty days after entry of the Board's order of April 3, 1969, sustaining the action of the appointing authority dismissing her from service.

It follows the district court was without jurisdiction to determine the reasonableness of the Board's order in the original action in equity, and it erred in rendering judgment granting the appellee relief.

What has been said renders unnecessary the determination of other questions raised by the parties.

The case is remanded to the district court with directions to dismiss the equity action.

It is so ordered.

PRAGER, J., not participating.

OWSLEY, J., dissenting: The majority opinion declares that plaintiff's remedy, after her dismissal was sustained by the Civil Service Board, was by appeal and that appeal was an exclusive remedy. This opinion disposes of this case on a procedural point without any concern for the gross injustice resulting therefrom. It is difficult to perceive why the majority of this Court approved this opinion without any effort to consider means of avoiding its harshness and unfairness. Perhaps after my period of infancy on the Court has passed I can develop a callousness in like situations, but I hope this never occurs.

Since a complete statement of the facts was not necessary to the majority opinion, reference thereto was limited. The trial court sustained a motion for summary judgment in favor of the plaintiff and in support thereof prepared and filed a "Rationale of the Decision." An extended quote therefrom is necessary to disclose the basis of this dissent:

"This Court finds beyond question that both the spirit and letter of the civil service statutes and regulations pertaining to the dismissal of a classified civil servant have been violated by the defendants in this case. If the position of the defendants in this case is correct, then the civil service laws of Kansas and the regulations thereunder are completely ineffective to establish any semblance of a state civil service system in the State of Kansas. . . .

"1. The act of the defendant . . . in summarily dismissing the plaintiff from her permanent position as a classified civil service employee without advance written notice specifying the grounds for dismissal and without affording her an opportunity to be heard prior to dismissal was in violation of procedural due process of law as required by the 14th Amendment to the Constitution of the United States. . . .

"2. The action of the defendant . . . in dismissing the plaintiff from her permanent position as a classified civil service employee was in direct violation of Kansas Department of Administration Regulations, Article 9, governing the dismissal of classified civil service employees.

.   .   .   .   .   .   .   .   .   .   .   .   .

"In accordance with the provisions of K. S. A. 75-2943 heretofore discussed, regulations were adopted by the Civil Service Board pertaining to ser-

vice ratings and how they should be considered in determining whether or not a civil service employee should be dismissed . . . In Regulation 1-9-2 the various appointing authorities are required to furnish service rating reports for each employee who is in the classified service. Each civil service employee is required to be rated by his immediate supervisor or by another qualified person designated by the appointing authority and each employee is required to be informed as to the standards on which his job performance is rated, his rating on each of these standards, and his final adjective rating. A classified employee may be rated as excellent, very good, satisfactory, fair or unsatisfactory. If an employee is rated as unsatisfactory he is to be so informed and has a right of appeal. Regulation 1-9-10 covers the subject of dismissal of an employee and the relevance and weight to be given to service ratings in connection with such dismissal. This regulation provides as follows:

'1-9-10. Dismissal. If the service rating assigned to a permanent employee is unsatisfactory (U) and if the employee does not make sufficient improvement in his job performance so that on a supplementary service report to be made two months later his service rating is fair (F) or better, the appointing authority may consider the service rating as cause for dismissing the employee.'

". . . What all these statutes and regulations mean is simply this: The question of dismissal of a permanent civil service employee is to be determined by his record over the long pull and not by a fit of pique or some temporary disagreement which might arise in the course of his work. Permanent civil service employees in Kansas are to be rated in accordance with the regulations periodically and if rated unsatisfactory, the appointing authority may consider the service rating as a cause for dismissing the employee. On occasions, of course, a situation may arise where the permanent civil service employee is guilty of dishonesty, moral turpitude, conviction of a crime or other severe infractions justifying summary action. This position is taken by the civil service board in the case involving Violet Cowan where the following statement was made in its decision by the Civil Service Board:

"Unless the Appointing Authority shall allege and prove, that the employee is guilty of dishonesty, moral turpitude, conviction of a crime or other severe infractions justifying summary action, it is fatal to the cause of the appointing authority, if it is shown that such appointing authority failed to:

'1. Follow any statutory requirements, or;

'2. Follow the rules and regulations of the Department of Administration, or;

'3. Follow the published rules and policies that that particular appointing authority may have published and distributed to its personnel.'

"In the Cowan case the Civil Service Board held that the Board of Probation and Parole had disregarded and not followed regulation 1-9-10 just mentioned pertaining to dismissal and that the civil service employee Violet M. Cowan was entitled to be reinstated with back pay.

"Counsel for the defendants argues that under the provisions of K. S. A. 75-2949 the appointing authority may dismiss any permanent classified employee when he considers that the good of the service will be served thereby.

It is obvious to this Court that this section should be read in light of the other statutes pertaining to civil service and that an appointing authority cannot summarily, without just cause and without following the prescribed rules and regulations and procedures of the civil service board dismiss a permanent classified civil service employee without complying with the specific regulations established by the Civil Service Board.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"3. The evidence presented at the hearing before the Civil Service Board clearly could not justify a summary dismissal of plaintiff from her classified civil service position where there was no compliance with the appropriate civil service regulations discussed in the previous section. As pointed out in the statement of facts and as contained in the record, the plaintiff has a Masters Degree in Rehabilitation Counseling and was employed continuously in that field from June 23, 1958, until she was summarily dismissed on February 17, 1969. At no time during this eleven years did she receive a service rating below satisfactory, and as a matter of fact received a rating of very good for most rating periods. The testimony was undisputed that on November 30, 1968, only two and a half months before her summary dismissal she was granted permanent status as supervisor of vocational rehabilitation at Topeka State Hospital . . . It is clear that all of the persons in positions of major administrative responsibility at Topeka State Hospital testified in favor of plaintiff . . . Not a single one of the vocational rehabilitation counselors at the hospital who worked with Miss Thompson at the hospital were called as witnesses and no one in authority at Topeka State Hospital was asked to testify on behalf of the appointing authority. . . .

". . . This Court has concluded that from the evidence presented at the hearing there is nothing whatsoever in the record to disclose any neglect of official duties, any act of dishonesty, moral turpitude, or any other misconduct justifying the summary action that was taken in this case. Certainly there is no justification for the failure of either the appointing authority or the Civil Service Board to require that existing regulations established for the protection of the civil service system be complied with. This was an illegal, arbitrary and capricious action.

"4. . . . The only trouble in this case is that the record shows that the plaintiff was treated in an extremely shabby manner and given the run around because of the nature of the decision of the Civil Service Board. The Civil Service Board in its ruling sustained the dismissal *but ordered that she be restored to the eligible list as a qualified vocational rehabilitation counselor.* This Court agrees with the position of plaintiff's counsel that the very nature of this ruling was the cause of the course pursued by the plaintiff during the following year. She was clearly placed in a position of walking a tight rope, doing on the one hand what would be reasonably and legitimately expected to effectuate a mutually satisfactory resolution of the problems through the usual proper administrative channels but on the other hand to protect and preserve her rights, if such negotiations should fail, to seek legal redress in the courts. . . ."

The plaintiff herein, following her dismissal and before the

hearing before the Board, employed counsel. Her attorney, in counseling appellee, sought to advise her as to her right to appeal to the district court and as to her right to file an independent action, having in mind at all times the desire of appellee to be re-employed as a counselor within the year she remained eligible for re-employment.

Assuming that her counsel researched the law, and it appears that she did, she would have discovered the ruling of this court in *Gray*, which held that the dismissal of a civil service employee was a ministeral function and therefor unappealable. Since this was the only case decided by this court involving the Civil Service Board, she was fully justified in relying on it and advising her client to rely on it. In this situation, counsel could with confidence instruct her client to seek re-employment with her department since there was always available if she failed, an independent action to review the Board's decision. Counsel was also undoubtedly aware of our statement in *City of Kansas City v. Jones & Laughlin Steel Corp.*, 187 Kan. 701, 360 P. 2d 29, where we said:

"However, the courts are always open to hear meritorious complaints against illegal or oppressive acts of non-judicial public boards and officials, either at the instance of the state or of a private citizen especially aggrieved thereby; but not by appeal where no statute confers a right of appeal. In the absence of a statutory right of appeal, judicial redress for illegal, fraudulent or oppressive official conduct must be invoked through some appropriate extraordinary legal remedy recognized in our practice—injunction, mandamus or quo warranto. (Citing cases.)"

After the time for appeal had passed, counsel undoubtedly discovered this court by its decisions in *Lauber, Goetz,* and *Neeley* initiated doubts as to the precedent established in *Gray*. Thus, counsel was duped. Possibly this has occurred before when this court has reflected and then corrected its decisions, but we hope not with the fatal consequences that occurred here.

It cannot be denied that the plaintiff lost her remedy as a result of the change in the law made after she had relied on the discarded rule. I do not believe that this court is charged to enforce jealously and blindly a new declaration of the law under circumstances which obviously and glaringly result in a wrong.

The majority opinion in effect overrules the *Gray* case. Ordinarily, a new judicial rule operates retroactively and hence governs the instant case. In the occasional situation where there has been substantial reliance on a precedent that a court now finds unsound, an injustice occurs.

I feel that there should be some exceptions to the usual retroactive operation of judicial decisions. The court is justified in this case in finding the rule of procedure declared in the majority opinion to have prospective application only.

I do not propose all deviations from precedence should operate prospectively, but only when retroactive application results in undue hardship upon a party that has justifiably relied on the old rule. The concern should be to not penalize a party for relying on a rule whose liquidation he could not reasonably foresee.

The application of the foregoing is not without support. In *Gt. Northern Ry. v. Sunburst Co.*, 287 U. S. 358 (1932), 77 L. Ed. 360, 53 S. Ct. 145, the Supreme Court of the United States speaking through Justice Cardozo affirmed a ruling of the Supreme Court of Montana that an old precedent should apply to the considered case, but the old precedent would be supplanted henceforth. The court said beginning at page 364:

". . . A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating, too broadly (cf. *Tidal Oil Co. v. Flanagan, supra*), that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted. (Citing cases.) On the other hand, it may hold to the ancient dogma that the law declared by its courts had a Platonic or ideal existence before the act of declaration, in which event the discredited declaration will be viewed as if it had never been, and the reconsidered declaration as law from the beginning. (Citing Cases.) The alternative is the same whether the subject of the new decision is common law *(Tidal Oil Co. v. Flanagan, supra)* or statute. (Citing cases.) The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature. We review not the wisdom of their philosophies, but the legality of their acts. The State of Montana has told us by the voice of her highest court that with these alternative methods open to her, her preference is for the first. In making this choice, she is declaring common law for those within her borders. The common law as administered by her judges ascribes to the decisions of her highest court a power to bind and loose that is unextinguished, for intermediate transactions, by a decision overruling them. As applied to such transactions we may say of the earlier decision that it has not been overruled at all. It has been translated into a judgment of affirmance and recognized as law anew. Accompanying the recognition is a prophecy, which may or may not be realized in conduct, that transactions arising in the future will be governed by a different rule. If this is the common law doctrine of adherence to precedent as understood and enforced by the courts of Montana, we are not at liberty,

for anything contained in the constitution of the United States, to thrust upon those courts a different conception either of the binding force of precedent or of the meaning of the judicial process."

We have also determined in this state that departure from precedent may be retroactive or prospective. In *Carroll v. Kittle*, 203 Kan. 841, 457 P. 2d 21, we said:

". . . We find ample authority for the proposition that in departing from the rule of *stare decisis*, the court may restrict application of a newly established rule to the instant case, and cases arising in the future, where it is clear that the retrospective application of the new rule will result in a hardship to those who have relied upon prior decisions of the court."

The majority opinion cannot be justified on the grounds that there is no means to avoid the "shabby" treatment given the plaintiff by the defendant in view of what has been said herein.